CHARLES R. JONES AND ANN LEE KIRK (FORMERLY LOU A. JONES), Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jones v. Commissioner
Docket No. 16754-82.
United States Tax Court
T.C. Memo 1984-171; 1984 Tax Ct. Memo LEXIS 500; 47 T.C.M. (CCH) 1444; T.C.M. (RIA) 84171; April 4, 1984. D. Derrell Davis, for the petitioners Val J. Albright, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent has filed a motion to dismiss for lack of jurisdiction on the ground that the petition was not timely filed. Petitioners have made an oral motion to dismiss on the ground that the notice of deficiency was not valid because it was not mailed to petitioners' last known address and on the further ground that the notice of deficiency was not mailed within the 3-year statute of limitations [1] prescribed by section 6501(a). [2]
*502 1. Issues
The motions before the Court raise the following issues: 1. Whether the petition was filed within 90 days of the date on which the notice of deficiency was mailed as required by section 6213(a); (2) Whether the notice of deficiency was mailed to petitioners' "last known address" within the meaning of section 6212(b)(1), and, if not, whether the Court has jurisdiction in the case; and (3) Whether the notice of deficiency was timely under section 6501(a), the 3-year statute of limitations on assessments. 2. Basic Facts
The facts, all stipulated, show that petitioners, who were husband and wife in 1976 and 1977, filed joint returns for those years. The 1976 return was received by the Internal Revenue Service (IRS) on June 20, 1977. Both returns showed petitioners' address as "145 Fireside, Brownsville, Texas 78520" (the 145 Fireside addresss) and the same address was shown as the return address on the envelopes in which the returns were transmitted to the IRS. The 145 Fireside address on the 1977 return was lined out and "1734 Boca Chica" was written in behind it. A Form W-2 attached to the 1976 return shows petitioners' home address as "2401 Briar *503 Rose, Texarkana, Ark." (the Briar Rose address). An application for an extension of time to file the 1976 return shows petitioners' address as "117 Indian Trail, Searcy, Arkansas" (the Indian Trail address). A Form W-2 attached to the 1977 return shows the 145 Fireside address. Petitioners' 1976 and 1977 income tax returns were selected for audit, and on July 16, 1979, petitioner Charles Jones executed a power of attorney authorizing D. Derrell Davis (Davis), an attorney, to represent him; the power of attorney showed petitioners' address as "1743 Bocachica" in Brownsville, Texas. On January 15, 1980, petitioner Charles Jones signed a Form 872, extending the limitations period for 1976 to December 31, 1980; the form showed petitioners' addresss as 1743 Boca Chica in Brownsville. Petitioner Lou A. Jones signed a similar form which was approved by the IRS on February 28, 1980, which also showed 1743 Boca Chica as her address. On September 29, 1980, the IRS Austin Service Center sent a form entitled "Statement of Adjustment of Your Account", and on April 3, 1981, a communication headed "Final Notice", both addressed to the 1743 Boca Chica address. On October 6, 1980, Lou *504 A. Jones and on October 22, 1980, Charles R. Jones signed Forms 872-A extending the assessment period for 1976 under the following terms: (1) The amount(s) of any Federal Income tax due * * * for * * * 1976 * * * may be assessed on or before the 90th * * * day after: (a) the Internal Revenue Service office considering the case receives Form 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the taxpayer(s); or (b) the Internal Revenue Service mails Form 872-T to the taxpayer(s); or (c) the Internal Revenue Service mails a notice of deficiency for such period(s). * * * (2) This agreement ends on the earlier of the above expiration date or the assessment date of an increase in the above tax that reflects the final determination of tax and the final administrative appeals consideration. * * * Some assessments do not reflect a final determination and appeals consideration and therefore will not terminate the agreement before the expiration date. Examples are assessments of: (a) tax under a partial agreement; (b) tax in jeopardy; (c) tax to correct mathematical or clerical errors; (d) tax reported on amended returns; and (e) advance payments. In *505 addition, unassessed payments, such as amounts treated by the Service as cash bonds and advance payments not assessed by the Service, will not terminate this agreement before the expiration * * * date determined in (1) above. (3) This agreement will not reduce the period of time otherwise provided by law for making such assessment.
* * * Both of these forms were approved by the IRS Regional Director of Appeals, and they bear the 1743 Boca Chica address. On March 11, 1981, and April 22, 1981, the IRS sent communications to petitioners addressed to "P.O. Box 4085, Brownsville, Texas"; however, the letters were not delivered. On March 23, 1981, and on April 28, 1981, the IRS sent communications to petitioners at the 1734 Boca Chica address, and the communications were not returned to the IRS.
On March 15, 1981, Lou A. Jones executed a Form 872-A and on March 19, 1981, Davis, on behalf of Charles Jones, executed a Form 872-A with respect to 1977. These forms contained terms similar to the ones executed for 1976, and both of them bore the 145 Fireside address. On or about June 30, 1981, the IRS sent a letter to petitioners' attorney, Davis, the body of which is as follows: *506 I have prepared the enclosed agreement form to close the above case on the basis proposed in our discussion. The copy is for your records. Please return the signed original as soon as possible. Amounts shown do not include interest required by law. An addressed envelope is enclosed for your convenience. We will notify you when the proposed settlement is approved. If you have any questions, please contact me * * *. [Emphasis added.] The letter stated that it enclosed an "agreement form" and an "audit statement for your records." The letter added the following postscript: Derrell, if you could get Charles Jones to pay the $2,241.91, I would not have to send an 870 to Mrs. Jones in Hawaii and could avoid a lot of long distance explanations to her. I would sure appreciate it if you could handle it that way. The agreement Form 870 (Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment), enclosed with the letter, contained the following: I consent to the immediate assessment and collection of any deficiencies (increase in tax and penalties) and accept any overassessment (decrease in tax and penalties) shown *507 below, plus any interest provided by law. I understand that by signing this waiver, I will not be able to contest these years in the United States Tax Court, unless additional deficiencies are determined for these years. Taxable year ended
Increase in Tax and Penalties
12/31/76
12/31/77
$2,241.91
Beneath these figures and signatures of Davis and each of the petitioners, dated "10/22/81," "11/12/81, and "11/16/81," respectively, is the following printed note: NOTE: If you consent to the assessment of the deficiencies shown in this waiver, please sign and return the form in order to limit any interest charge and expedite the adjustment to your account.Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are so entitled; nor prevent us from later determining, if necessary, that you owe additional tax; nor extend the time provided by law for either action. This form showed the 1734 Boca Chica address for both petitioners. On April 1, 1982, respondent sent to petitioners, by certified mail, a notice of deficiency for 1976 and 1977, addressed to them at 1734 Boca Chica, determining *508 the following deficiencies: Additions to Tax
Year
Deficiency
Sec. 6653(a)
1976
$12,275.60
$613.78
1977
32,908.65
1,645.43
Although delivered by the IRS to the post office on April 1, 1982, the notice of deficiency was dated April 4, 1982. The notice was returned to the IRS undelivered. On or about April 1, 1982, respondent also sent a courtesy copy of the notice to Davis, petitioners' authorized representative; this copy was received by Davis on April 5, 1982.Within 90 days after April 5, 1982, Davis contacted petitioners and advised them of his receipt of the courtesy copy of the notice of deficiency. On July 8, 1982, petitioners filed their petition in this Court. The petition was mailed to the Court in an envelope which bears a postmark date of July 6, 1982. The parties have stipulated that, in 1982, April 1 was a Thursday; April 4 was a Sunday; June 30 was a Wednesday; July 3 was a Saturday; July 5 was a Federal holiday in the District of Columbia; and July 6 was a Tuesday. 3. Timeliness of Petition
Section 6212(a) provides that, when *509 the Secretary determines that there is a deficiency in income tax, he is authorized to send notice of such deficiency to the taxpayer by certified or registered mail. Section 6212(b)(1) states that it shall be sufficient if the notice is mailed to the taxpayer at his last known address. Section 6213(a) provides that a taxpayer may file a petition in this Court within 90 days after the notice of deficiency is mailed, "not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day." The issue as to the timeliness of the petition as well as the issue as to the effect of the alleged error in addressing the notice of deficiency must be determined within this statutory framework. Respondent contends that the 90-day period for filing a petition began on April 1, 1982, when the IRS delivered the notice of deficiency to the post office, with the result that the petition was filed too late. Petitioners argue that the 90-day period began on April 4, 1982, the date shown on the notice, and that the petition was, therefore, timely. We agree with petitioners. The notice of deficiency in this case is clearly dated April 4, 1982, and it expressly states: *510 If you want to contest this determination in court before making any payment, you have 90 days from the above mailing date of this letter * * * to file a petition with the United States Tax Court for a redetermination of the amount of your tax. * * * The notice of deficiency contains no clue as to when it was deposited in the mails by the IRS, and we think petitioners' counsel was entitled to rely on the representation contained in the notice itself as to its mailing date. Otherwise, the statutory scheme for prepayment review of the proposed deficiency will be thwarted. In a number of decided cases, it is true, the courts have made the broad statement that the date of mailing for section 6212(a) purposes is not the date on the notice of deficiency but is the date on which the notice was delivered by the IRS to the post office. Those cases, however, did not involve post-dated notices. They involved situations where the date of the notice and the date of the deposit in the post office were the same, e.g., August v. Commissioner,54 T.C. 1535 (1970); where the *511 notice was undated, Hurst, Anthony & Watkins v. Commissioner,1 B.T.A. 26, 27 (1924); or where the date on the notice was earlier than the date of actual mailing. United Telephone Co. v. Commissioner,1 B.T.A. 450 (1925). In none of the foregoing cases, or in any others that we have located, was the date on the notice later than the date of deposit in the post office, as is here the case. ( Loyd v. Commissioner,T.C. Memo. 1984-172, decided this day, is similar.) In those cases, the taxpayer would not have been disadvantaged by relying on the date of the notice. As elaborated in Traxler v. Commissioner,61 T.C. 97, 99-100 (1973), where the Court thought that certain numbers appearing on an envelope were a postmark date later than the date of the notice: The difficulty with the date of deposit of certified mail with the Post Office is that the taxpayer has no knowledge of when it is. Ordinarily, of course, it will correspond with the postmark, if there is one, and the date on the notice of deficiency. But we are not considering the ordinary case here. Generally the taxpayer will rely on the date appearing *512 on the notice of deficiency, since the notice instructs him to do so and since it is likely to be the earliest date, and thus the safest to rely on. [3]
The statutory scheme of sections 6212(a), 6212(b)(1) and 6213(a), summarized above, is designed to inform the taxpayer of the IRS' intention to assess a deficiency and to give the taxpayer an opportunity to withhold payment of the *513 tax pending determination by the Tax Court of the validity and correctness of the proposed assessment. Perlmutter v. Commissioner,44 T.C. 382, 400 (1965), affd. 373 F.2d 45 (10th Cir. 1967). In advising petitioners when they made their decision as to whether to seek prepayment Tax Court review of the proposed deficiency in the unusual case here before the Court, petitioners' counsel relied on the date of mailing stated in the notice of deficiency.[4] To ignore respondent's error in dating the notice and to treat the date of deposit of the notice of deficiency in the post office as the date of mailing would frustrate the statutory scheme. The notice will, therefore, be treated as mailed as of April 4, 1982, the date stated on the notice to be the date of mailing. [5]
*514 The petition was mailed in an envelope postmarked July 6, 1982, and is deemed to have been mailed on that date. Sec. 7502. Not counting July 3, a Saturday, July 4, a Sunday, and July 5, a legal holiday in the District of Columbia, as directed by section 6213(a), the petition was filed within 90 days of April 4, 1982. The Court, therefore, has jurisdiction. 4. Adequacy of the Mailing of the Notice of Deficiency
As disclosed in our findings, petitioners used a wide variety of addresses in their dealings with the IRS with respect to their 1976 and 1977 income tax returns. Their situation was further complicated by the fact that they were separated and lived apart in years after the returns for those years were filed. The issue is whether the IRS' use of the 1734 Boca Chica address in mailing the notice met the requirements of the statutory provisions summarized above. Petitioners contend that 1743 Boca Chica was the address respondent should have used. We think, however, that respondent reasonably used the 1734 Boca Chica address. For purposes of section 6212(b)(1), the Court *515 has stated that a taxpayers "last known address" is the address to which, in the light of all the facts and circumstances, the IRS reasonably believed the taxpayer wished the notice of deficiency to be sent. Frieling v. Commissioner,81 T.C. 42, 49 (1983); Looper v. Commissioner,73 T.C. 690, 696 (1980); Lifter v. Commissioner,59 T.C. 818, 821 (1973). There may be more than one such address. Delman v. Commissioner,384 F.2d 929, 932 (3d Cir. 1967), affg. a Memorandum Opinion of this Court; Lifter v. Commissioner,supra at 822. We think it reasonable that the IRS used the 1734 Boca Chica address in mailing the notice. Petitioners had used no less than six different addresses in their dealings with the IRS with respect to their 1976 and 1977 returns: the 145 Fireside address, the Briar Rose address, the Indian Trail address, the 1743 Boca Chica address, the 1734 Boca Chica address, and the P.O. Box 4085 address. The 1734 Boca Chica address had been used in some prior correspondence and was shown on the Form 870 signed by petitioners and their attorney in mid-November 1981, approximately *516 4 months before the notice of deficiency was mailed. This was the address shown on the last document filed by petitioners with the IRS before the notice of deficiency was mailed. Although one of the other addresses might have been selected, we think that it was reasonable for the IRS to mail the notice to the 1734 Boca Chica address. Thus, we hold that this mailing satisfied the requirement of section 6212(b)(1). The petition, timely filed, gave this Court jurisdiction. Frieling v. Commissioner,supra;Lifter v. Commissioner,supra.
5. Timeliness of Notice of Deficiency
Section 6501(c)(4) provides: (4) Extension by agreement.--Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title * * * both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration *517 of the period previously agreed upon. The Forms 872-A for 1976 and 1977, described above, were signed by or on behalf of petitioners and were approved by the IRS Regional Director of Appeals. They were valid consents in writing, signed by both parties, for the extension of the time within which deficiencies could be assessed even though they did not fix precise dates on which the extensions would expire. McManus v. Commissioner,583 F.2d 443, 446 (9th Cir. 1978), affg. 65 T.C. 197 (1975). The agreements carefully delineated the procedure whereby they were to be terminated. Petitioners contend that the IRS letter transmitting the Form 870 to Davis was a termination by the IRS of the consents for the extension of the assessment periods. As we understand petitioners' argument, they contend that this letter and the Form 870 reflected "the final administrative appeals consideration," as contemplated by the above quoted portion of the Forms 872-A. We do not agree. We think that the most reasonable interpretation of the letter and the enclosed Form 870 is that the parties had reached a conditional partial settlement with respect to certain issues *518 but the assessment period was to remain open with respect to the other issues in the case. In the Form 870, petitioners consented to the immediate assessment of the stated amount of the deficiency. By signing the Form 870 waiver, petitioners agreed that they would "not be able to contest these years in the United States Tax Court, unless additional deficiencies are determined for these years." This was notice to petitioners that additional deficiencies might be determined. The note, quoted above from the printed Form 870, states that petitioners' consent to the immediate assessment of the stated amount would "limit any interest charge and expedite the adjustment to your account," but would not "prevent us [IRS] from later determining, if necessary, that you owe additional tax." The letter itself states that: "We will notify you when the proposed settlement is approved." We think it quite clear, therefore, that the Form 870 and the accompanying letter did not terminate the agreement for the extension of the assessment period provided by the Forms 872-A. In support of their oral motion, petitioners state on brief: Here it was clearly understood that Appeals consideration *519 was terminated when the Appeals Officer, Mr. Rackley, and Petitioner's counsel, Mr. Davis, reached an agreement on some of the issues and Mr. Davis was told a statutory notice would be forthcoming. Therefore, a partial agreement was subsequently executed and Mr. Davis was again told a statutory notice was forthcoming. * * * It is obvious from the foregoing that neither Mr. Rackley nor Mr. Davis felt formal notice of termination of Appeals consideration necessary. * * * The Court has before it to testimony from either Mr. Davis or Mr. Rackley. It has only the documents that have been stipulated, and they are not sufficient to establish as facts these statements in petitioners' brief, or to show a termination of the Forms 872-A consent prior to the issuance of the April 4, 1982, notice of deficiency. Petitioners cite Borg-Warner Corp. v. Commissioner,660 F.2d 324 (7th Cir. 1981), revg. an order of this Court. In that case, in which the taxpayer and the IRS had signed a Form 872-A, an IRS conferee wrote a letter stating that the IRS conferees had "carefully considered the evidence and arguments in support of your position," adding: We regret that we have *520 been unable to agree upon a mutually satisfactory basis for closing the case, although settlement proposals and counterproposals were made and considered by the parties. Accordingly, this is to inform you that it is our intention to recommend issuance of a statutory notice of deficiency reflecting the adjustments proposed by the District Director. Your cooperation has been very much appreciated.
The court of appeals found that this letter was notification of the end of appellate consideration of the dispute, as contemplated by the Forms 872-A, and thus effected a termination within 90 days thereafter of the extension of the limitations period on assessments. Pointing out that the letter used the past tense consistently, the court concluded that it signalled the end of the Appellate Division's consideration of the case. Pursuant to the terms of the Form 872-A, the IRS had 90 days within which to issue a notice but failed to do so. See also Johnson v. Commissioner,68 T.C. 637 (1977). The Borg-Warner case is clearly distinguishable on its facts from the instant matter. Here, in contrast to the Borg-Warner letter, the IRS letter of June 30, 1981, used *521 the future tense. The IRS, moreover, stated that it would "notify you when the proposed settlement is approved" and specifically reserved the right to determine deficiencies in addition to the ones listed in the Form 870. Accordingly, petitioners' oral motion will be denied.
To reflect the foregoing, An appropriate order will be entered.
Footnotes
1. Respondent argues that petitioner's oral motion to dismiss on the ground that the notice of deficiency was not timely should be in the form of a motion for summary judgment. He points out that an issue based on the statute of limitations is a defense in bar and not a plea to the jurisdiction of the Court. Badger Materials, Inc. v. Commissioner,40 T.C. 1061, 1062-1063 (1963); see Robinson v. Commissioner,57 T.C. 735, 737↩ (1972). Because we conclude that petitioners have not made a prima facie showing that the notice of deficiency was untimely, we shall treat the motion as one for summary judgment and dispose of it on its merits. 2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
3. The Court in Traxler v. Commissioner,61 T.C. 97, 100 (1973) recognized that "mailed" may have more than one meaning: Where, as here, the word "mailed" is capable of two interpretations, we are inclined to adopt a construction which will permit us to retain jurisdiction without doing violence to the statutory language. To accept the postmark date under these particular circumstances and thus save jurisdiction would, in our judgment, be reasonable and proper. On reconsideration, the Court was convinced by testimony that the numbers appearing on the envelope were not, in fact, a postmark, and the case was dismissed. Traxler v. Commissioner,63 T.C. 534↩ (1975).
4. We quote the following from respondent's memorandum brief: Respondent, by filing of his motion to dismiss, was not attempting to deny petitioners the opportunity to litigate their case in this Court, but was concerned about the jurisdiction of the Court in this case. Should the Court be satisfied that petitioners were misled by the erroneous date on the notice of deficiency, respondent would have no objection to the Court finding that it has jurisdiction. ↩
5. We emphasize that we are not announcing a rigid rule under which the date stamped on the face of the notice will always be considered the date the notice was mailed for purposes of sec. 6213(a). We do not intend, for example, to shorten the period which existing law gives the taxpayer to file his petition when the date stamped on the notice is earlier↩ than the date of delivery to the postal authorities. Our holding is limited to the facts of this unusual case.