147 T.C. No. 6

UNITED STATES TAX COURT

CHARLES J. WEISS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13643-11L.                           Filed August 17, 2016.

In an effort to collect P's unpaid tax liabilities, R prepared for P a Final Notice of Intent to Levy and Your Right to a Hearing (levy notice). R attempted to hand-deliver the levy notice during a field call on February 11 but was deterred by P's dog. Two days later R initiated the mailing of the levy notice by certified mail to P's last known address. R did not generate a new levy notice dated February 13; he enclosed in the envelope the original levy notice dated February 11. P received the levy notice on February 17. P completed Form 12153 requesting a collection due process (CDP) hearing for the tax years at issue and mailed it to R on either March 13 or 14. R received it on March 16, which was a Monday.

During the CDP hearing P argued that the period of limitations on collection of his tax liabilities had expired. P based this contention on the assertion that he intentionally had filed his request for a CDP hearing one day late, such that he was entitled only to an "equivalent hearing," which would not have suspended the period of limitations on collection. R contends that petitioner's request for a CDP

hearing was in fact timely because it was filed within 30 days of the date on which the IRS mailed him the levy notice.

Before R may levy against a taxpayer's property, R must provide written notice of the proposed levy and inform the taxpayer of his right to an administrative hearing. A levy notice must be sent or delivered to the taxpayer "not less than 30 days before the day of the first levy." I.R.C. sec. 6330(a)(2). This notice must inform the taxpayer in simple and nontechnical terms of his right "to request a hearing during the 30-day period" specified in I.R.C. section 6330(a)(2). See I.R.C. sec. 6330(a)(3)(B).

1. Held: When the date appearing on a levy notice is earlier than the date of mailing, the 30-day period prescribed by I.R.C. section 6330(a)(2) and (3)(B) is calculated by reference to the date of mailing.

2. Held, further, the directive that levy and lien notices should be drafted "in simple and nontechnical terms" does not require invalidation of a levy notice when there is a mismatch between the letter date and the mailing date.

3. Held, further, P timely filed his request for a CDP hearing because he mailed his Form 12153 to R, and it was received by R, within 30 days of R's mailing of the levy notice. See I.R.C. secs. 7502 and 7503.

4. Held, further, the period of limitations on collection was suspended when P timely requested a CDP hearing, and it remains suspended. See I.R.C. secs. 6330(e)(1), 6502.


Daniel J. Pilla, for petitioner.

Jonathan E. Behrens, for respondent.

LAUBER, Judge: In this collection due process (CDP) case petitioner seeks review, pursuant to section 6330(d)(1),[1] of the determination by the Internal Revenue Service (IRS or respondent) to uphold a notice of intent to levy. The IRS served the levy notice on petitioner in an effort to collect his unpaid Federal income tax liabilities for 1986, 1987, 1988, 1989, 1990, and 1991, which exceeded $550,000 in the aggregate. Petitioner contends that the period of limitations on collection of these liabilities expired in July 2009. He bases this contention on the assertion that he intentionally filed his request for a CDP hearing one day late, such that he was entitled only to an "equivalent hearing" rather than to the CDP hearing that the IRS afforded him. If petitioner's contentions are correct, the collection period of limitations would not have been suspended during the CDP process, and his tax liabilities in that event would appear to be uncollectible.

Respondent contends that petitioner's request for a CDP hearing was in fact timely because it was filed within 30 days of the date on which the IRS mailed him the notice of levy. See sec. 6330(a)(3)(B). Respondent acknowledges that the date appearing on the levy notice was at least two days earlier than the mailing date but argues that the mailing date dictates the start of the 30-day period where

---

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times. We round all dollar amounts to the nearest dollar.

(as here) it is the later of the two dates.  Cf. Bongam v. Commissioner, 146 T.C.

__, __ (slip op. at 11-12) (Feb. 11, 2016).  On this point we agree with respondent.

Because petitioner has raised no other meaningful challenge to the settlement

officer's determination, we will sustain the proposed collection action.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of

facts and the attached exhibits are incorporated by this reference.  Petitioner re-

sided in Pennsylvania when he filed his petition.

In 1994 petitioner filed delinquent returns for 1986-1991.  In October 1994

the IRS assessed the tax liabilities shown on those returns along with additions to

tax under sections 6651(a)(1), 6651(a)(2), and 6654.  Between 1994 and 2009

petitioner filed for bankruptcy three times; these filings served to suspend the 10-

year period of limitations on collection set forth in section 6502(a)(1).[2]  After

factoring in the suspensions for these bankruptcies, the collection period of limita-

tions for the tax years at issue was set to expire in July 2009.

---

[2]The U.S. Bankruptcy Court for the Eastern District of Pennsylvania held that petitioner had attempted to evade or defeat his income tax liabilities for the 1988-1991 tax years.  United States v. Weiss (In re Weiss), 237 B.R. 600, 606 (Bankr. E.D. Pa. 1999).  That determination was affirmed on appeal with respect to all six years at issue.  United States v. Weiss, 2000 U.S. Dist. LEXIS 16523, at *13-*14 (E.D. Pa. Nov. 15, 2000), aff'd, 276 F.3d 582 (3d Cir. 2001).

With a view to collecting petitioner's outstanding liabilities, the IRS assigned a Revenue Officer (RO) to his case. The RO prepared a Letter 1058A, Final Notice of Intent to Levy and Notice of Your Right to a Hearing. The RO generated this levy notice using the IRS Integrated Collection System (ICS), which affixed February 11, 2009, as the date on the letter. The RO appended to the levy notice copies of IRS Publication 1, Your Rights as a Taxpayer; Publication 1660, Collection Appeal Rights; Publication 594, What You Should Know About the IRS Collection Process; and Form 12153, Request for a Collection Due Process or Equivalent Hearing. The RO concurrently generated a separate Letter 1058A, concerning a joint income tax liability for 2001, that was addressed to petitioner's wife, Betty Hockenbury.

The RO made a "field call" later that day in an effort to hand-deliver the two levy notices to petitioner's residence. He was deterred by a dog blocking the driveway; he left without delivering either notice, opting to send them by certified mail instead. The RO completed his other field calls that afternoon and went home without returning to his office.

On February 12 the RO conferred with an IRS colleague to ascertain whether a criminal investigation should be opened against petitioner. His colleague got back to him at the end of the day with a negative answer. On February 13 the RO

prepared an envelope in which the levy notice for 1986-1991 was to be sent by certified mail to petitioner's last known address. The RO did not generate a new levy notice dated February 13; he simply enclosed in the envelope the original levy notice dated February 11, together with the Form 12153 and the three IRS publications listed above. He attached to the envelope U.S. Postal Service (USPS) Form 3800, Certified Mail Receipt, and USPS Form 3811, Certified Mail Return Receipt. On the Form 3800 he made the notation "L1058," standing for Letter 1058, and indicated that it was being "sent to Charles Weiss." That same morning the RO prepared a similar levy notice concerning the 2001 joint tax liability addressed to petitioner's wife.

On February 13 the RO placed the envelopes containing the two levy notices, with USPS certified mail slips attached, in the outgoing mail bin at his office. He credibly testified that the office's standard operating procedure was to have outgoing mail picked up from that bin by support staff two or three times a day. The support staff would meter all outgoing mail and put it into a postal box outside the IRS office, to be picked up by USPS personnel. Because outgoing mail was stamped using a private postage meter, it did not receive a USPS postmark.

The date of the imprint of the private postage meter on the envelope in which each notice was mailed was February 13, 2009. After placing the two levy

notices in the outgoing mail bin, the RO updated the Integrated Data Retrieval System (IDRS) through ICS to indicate that the levy notices had been mailed to petitioner and to his wife on Friday, February 13, 2009.[3] The IRS office in which the RO worked was closed the next three days for the weekend and for Presidents' Day. The U.S. Post Office to which mail from that IRS office was taken was open on February 14, but was closed on February 15 and 16.

On February 17 petitioner's wife signed the USPS Form 3811 for each levy notice. Her signatures on these forms establish that the two levy notices were delivered to her, and that she received them, on that day. The certified mail numbers on the Forms 3811 that she signed match the certified mail numbers on the Forms 3800 that the RO completed. The RO subsequently made an updated IDRS entry confirming that he had "received return receipts back date stamped by Post Office on 2/17/2009 for Charles Weiss & Betty Hockenb[u]ry"; that "both return receipts are signed by B. Hockenb[u]ry"; and that the taxpayers had "accepted delivery" of the levy notices.

Petitioner's wife opened the envelopes, took out the enclosed documents, set them aside for her husband, and threw away the envelopes. When petitioner

---

[3]The RO's entry for February 13 reads as follows: "RO Sent L1058 certified with Pub 594, Pub 1660 & Pub 1 Copy to Charles Weiss and Betty Hockenbury * * * LTR 1058 Delivery Status: Mailed."

came home from work that day, he reviewed the levy notices and the IRS publications. By reading the publications, petitioner, who is an attorney, became aware of the collection actions available to the IRS and of the alternatives potentially available to him. He understood the difference between a CDP hearing, which would entitle him to judicial review if he were dissatisfied, and an "equivalent hearing," in which any collection relief would be solely at the IRS' discretion. Petitioner did not have the ability in February 2009 to pay his Federal tax liabilities, which then exceeded $550,000. He understood that enforced IRS collection action would cause serious financial hardship and make it impossible for him and his wife to maintain their standard of living.

In response to the two levy notices petitioner prepared two Forms 12153, Request for Collection Due Process or Equivalent Hearing. One Form 12153 requested a hearing with respect to petitioner's 1986, 1987, 1988, 1999, 2000, and 2001 tax years (1986 CDP Form). Petitioner was in a hurry to file the 1986 CDP Form and completed it at "the last minute"; he inadvertently listed tax years 1999-2001 instead of 1989-1991, the years actually covered by the levy notice.[4] As his

----

[4]There is nothing in the record to indicate that the IRS sent petitioner any notice relating to 1999 or 2000. We find that he intended to list tax years 1989 and 1990 on the 1986 CDP form and that he wrote 1999 and 2000 by mistake as a holographic error. We find that he made a similar holographic error on the 1986

(continued...)

basis for requesting a CDP hearing he stated that he "can't pay the tax owed" and that "levy action will cause hardship." He did not check the box captioned "Equivalent Hearing." He dated this form March 13, 2009.

The other Form 12153 requested a hearing with respect to the 2001 joint tax liability of petitioner and his wife (2001 CDP Form). As the basis for requesting a CDP hearing he stated that he and his wife "can't pay the tax owed" and that "levy action will cause hardship." He did not check the box captioned "Equivalent Hearing." He dated this form March 13, 2009.

Petitioner mailed one Form 12153 in an envelope postmarked March 13, 2009, and he mailed the other Form 12153 in an envelope postmarked March 14, 2009. The IRS received both Forms 12153 on Monday, March 16, 2009. After the envelopes were opened, the forms became separated from their envelopes. In the absence of any identifying markings on the envelopes, the IRS was unable to determine which envelope had contained the 1986 CDP Form and which envelope had contained the 2001 CDP Form.

On April 13, 2009, the RO sent petitioner a letter noting that he had neglected to list tax years 1989-1991 on the 1986 CDP Form. Two weeks later, the SO

---

[4](...continued)
CDP Form in writing 2001 instead of 1991. He did receive notice of a joint liability with his wife for 2001, but he mailed in a separate Form 12153 for that year.

received from petitioner a revised Form 12153, dated April 23, 2009, that listed the six years that were actually at issue. Petitioner on this revised form did not check the box captioned "Equivalent Hearing." He again stated as his basis for requesting a CDP hearing that he "can't pay the tax owed" and that "levy action will cause hardship."

A settlement officer (SO) was assigned to petitioner's case. The SO reviewed his tax transcripts for 1986-1991. She properly verified that: (1) the assessments for each year were properly made; (2) there was a balance due for each year; and (3) the tax bill for each year was mailed to petitioner's last known address within 60 days of each assessment.

The SO also verified that the statute of limitations did not bar collection of petitioner's 1986-1991 liabilities. The end of the 10-year period specified in section 6502(a)(1) had passed in July 2009. However, section 6330(e)(1) provides: "[I]f a hearing is requested under subsection (a)(3)(B), * * * the running of any period of limitations under section 6502 (relating to collection after assessment) * * * shall be suspended for the period during which such hearing, and appeals therein, are pending."

The SO determined that the collection period of limitations remained open because petitioner had timely requested a CDP hearing. In making this determi-

nation, the SO concluded that the critical date was not February 11, 2009, the date appearing on the levy notice, but the date on which that notice was actually mailed to petitioner. She examined the ICS history transcript maintained by the RO, which showed February 13, 2009, as the mailing date. She also examined the USPS forms in the administrative file. She concluded that the Form 3800 (completed by the RO on February 13) and the Form 3811 (signed by petitioner's wife on February 17) likewise pointed to February 13 as the mailing date, given that the IRS office was closed on the intervening three days. Although it was uncertain whether petitioner had mailed the 1986 CDP Form on March 13 or 14, the SO found it timely in either event because both dates were within 30 days of February 13.

On November 25, 2009, the SO sent petitioner a letter informing him that his CDP hearing request for 1986-1991 had been received and was timely. She indicated that she had scheduled a telephone CDP hearing for January 22, 2010, and enclosed the forms petitioner would need to complete in order to seek a collection alternative. Petitioner communicated with the SO, by letter or telephone, three times during December 2009. On none of these occasions did he disavow his desire for a CDP hearing or assert that he wanted only an "equivalent hearing."

Petitioner retained Daniel Pilla, his current counsel, on January 15, 2010. During the CDP hearing one week later Mr. Pilla contended that petitioner's CDP hearing request was untimely because the date appearing on the levy notice, February 11, 2009, controlled in determining whether petitioner had filed his request within the 30-day period specified in section 6330(a)(3)(B). The SO disagreed and stated that she considered both Forms 12153 to have been filed timely because the 30-day period was calculated from the mailing date. Petitioner during the CDP hearing did not challenge the dollar amount of his underlying tax liabilities or seek a collection alternative. Apart from claiming that the collection period of limitations for 1986-1991 had expired, he did not dispute the appropriateness of the proposed levy.[5]

The SO sought from IRS Chief Counsel a legal opinion concerning the timeliness issue. In December 2010 she received an opinion concluding that "the 30-day period for filing a CDP hearing request runs from the date the CDP notices were mailed." The SO telephoned Mr. Pilla to inform him of the IRS' position and asked whether petitioner sought a collection alternative. Mr. Pilla said he would give her an answer by April 29, 2011. On May 6, 2011, having received no

---

[5]Petitioner paid the 2001 joint income tax liability, totaling about $3,000, in early 2010.

further communication from petitioner or his counsel, the IRS sent petitioner a notice of determination sustaining the levy to collect his unpaid tax liabilities for 1986-1991.  Petitioner timely petitioned this Court for review.

OPINION

Section 6330(d)(1) does not prescribe the standard of review that this Court shall apply in reviewing an IRS administrative determination in a CDP case.  The general parameters for such review are marked out by our precedents.  We generally review the Appeals officer's determination as to the propriety of particular collection action for abuse of discretion.  Wadleigh v. Commissioner, 134 T.C. 280, 288 (2010); Sego v. Commissioner, 114 T.C. 604, 610 (2000).  However, where the validity of the underlying tax liability is properly at issue, we will review the matter de novo.  We apply de novo review where the taxpayer did not receive a notice of deficiency or did not otherwise have an opportunity to challenge the tax assessed against him.  See Wadleigh, 134 T.C. at 288; Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

There is some uncertainty in our precedents as to whether a de novo standard of review applies where (as here) the controversy concerns a challenge to the

10-year collection period of limitations.[6]  Petitioner argues that his tax liability is uncollectible because the period of limitations on collection has expired.  If that is so, respondent's proposed collection action would be impermissible under an abuse of discretion standard as well as under a de novo standard.  Because we must decide whether the SO correctly determined that the limitations period had not expired, we would reach the same result regardless of which standard we applied.  Cf. Kendricks v. Commissioner, 124 T.C. 69, 75 (2005) (explaining that, whether reviewing for abuse of discretion or de novo, we must reject an erroneous view of the law).  We base our resolution of all factual issues upon a preponderance of the evidence, so that assignment of the burden of proof is unnecessary. See, e.g., McLaine v. Commissioner, 138 T.C. 228 (2005); cf. sec. 7491(a).

A.    Governing Statutory Framework

Sections 6320 (pertaining to tax liens) and 6330 (pertaining to levies) establish procedures for administrative and judicial review of IRS collection action.

_____

[6]Compare, e.g., Jordan v. Commissioner, 134 T.C. 1, 8 (2010) ("We have held that a challenge to the 10-year period of limitations on collection is a challenge to the underlying liability."), with Crites v. Commissioner, T.C. Memo. 2012-267, at *11 ("The second (c)(1) issue here is whether the Appeals officer verified that the IRS assessed the penalty against Crites within the statute of limitations.  This is a (c)(1) issue because it is a 'legal requirement' that an Appeals officer must consider at a CDP hearing.").  See also Proper Standard of Review For Collection Due Process Determinations, IRS Notice CC-2014-002 (May 5, 2014).

The Commissioner must provide the taxpayer with written notice of lien filing or proposed levy action and inform the taxpayer of his right to an administrative hearing. See Davis v. Commissioner, 115 T.C. 35, 37 (2000). Such written notice must be furnished in one of three ways: it must be "given in person," be "left at the * * * [taxpayer's] dwelling or usual place of business," or be "sent by certified or registered mail * * * [to the taxpayer's] last known address." Secs. 6320(a)(2)(A)-(C), 6330(a)(2)(A)-(C).

A levy notice must be sent or delivered to the taxpayer "not less than 30 days before the day of the first levy." Sec. 6330(a)(2). This notice must inform the taxpayer in simple and nontechnical terms of his right "to request a hearing during the 30-day period" specified in section 6330(a)(2). See sec. 6330(a)(3)(B). "If the person requests a hearing in writing under subsection (a)(3)(B) and states the grounds for the requested hearing, such hearing shall be held" by the IRS Appeals Office. Sec. 6330(b)(1).

"[I]f a hearing is requested under subsection (a)(3)(B), the levy actions which are the subject of the requested hearing and the running of any period of limitations under section 6502 (relating to collection after assessment) * * * shall be suspended for the period during which such hearing, and appeals therein, are pending." Sec. 6330(e)(1). Following the hearing, the settlement officer issues a

notice of determination sustaining or declining to sustain the proposed collection action. If the taxpayer disagrees with that determination, he may petition for judicial review "and the Tax Court shall have jurisdiction with respect to such matter." Sec. 6330(d).[7]

"A taxpayer who fails to make a timely request for a CDP hearing is not entitled to a CDP hearing," but he may be afforded an "equivalent hearing." Sec. 301.6330-1(i)(1), Proced. & Admin. Regs. Any relief afforded in an equivalent hearing is discretionary with the IRS; the "decision letter" issued after such a hearing is not subject to judicial review. Id. para. (i)(2), Q&A-16. The collection period of limitations is not suspended during an equivalent hearing, and the IRS may thus proceed to collect the taxpayer's liabilities. Id., Q&A-13; see McGowan v. Commissioner, T.C. Memo. 2008-125.

---

[7]Petitioner's argument assumes that section 6330(e)(1) operates to suspend the collection period of limitations, regardless of whether the IRS in fact grants the taxpayer a CDP hearing, only if the taxpayer has requested that hearing within the 30-day period referenced in section 6330(a)(2) and (3)(B). Respondent does not challenge this assumption, which is consistent with the regulations. See sec. 301.6330-1(g)(2), Q&A-G2, Proced. & Admin. Regs.

B.      Commencement of the 30-Day Period

The focus of the parties' dispute is whether petitioner filed the 1986 CDP

Form within the 30-day period specified in section 6330(a)(3)(B).[8]  Petitioner sent

his hearing request to the IRS by certified mail on either March 13 or March 14,

2009.  Under the "timely mailing, timely filing" rule of section 7502, petitioner is

deemed to have filed his request on the date he mailed it.  Moreover, because

March 14 was a Saturday and March 15 was a Sunday, the 30-day window was

extended until Monday, March 16, 2009, and the IRS received petitioner's 1986

CDP Form on that date.  See sec. 7503.  The central question, therefore, is whether

March 14 was within 30 days of the levy notice.  If it was, the running of the

collection period of limitations was suspended and continues to be suspended until

---

[8]Although petitioner on the 1986 CDP Form incorrectly listed tax years 1999-2001 rather than 1989-1991, he corrected this error by filing, on April 23, 2009, a revised Form 12153 listing 1986-1991, the six years covered by the levy notice to which he was responding.  The parties do no dispute that the corrected Form 12153 relates back to the date on which the 1986 CDP Form was filed, so that petitioner is deemed to have requested a CDP hearing for tax years 1986-1991 ab initio.  Petitioner was in a hurry to file the 1986 CDP Form and completed it at "the last minute."  It is clear that he made a holographic error on the original Form 12153 and that he intended to request a CDP hearing for all six of the years covered by the levy notice, not for 1999-2000 (which were never at issue) or for 2001 (which he addressed in a separate Form 12153 submitted in response to the levy notice issued to his wife for that year).  Cf. O'Neil v. Commissioner, 66 T.C. 105, 107 (1976) (finding that a petition is adequate where it contains "some objective indication that the petitioner contests the deficiency determined by the Commissioner against him").

90 days after the decision in this case has become final. See sec. 6330(e)(1); sec. 301.6330-1(g)(3), Example (1), Proced. & Admin. Regs.

We have stated on several occasions that "the 30-day period in which a taxpayer may timely request an Appeals Office hearing begins on the day after the date of mailing" of a levy notice under section 6330(a). Newsome v. Commissioner, T.C. Memo. 2007-111, 93 T.C.M. (CCH) 1193, 1194; Lopez v. Commissioner, T.C. Memo. 2001-228, 82 T.C.M. (CCH) 469, 470 ("[T]he taxpayer has 30 days from the mailing of * * * [the levy] notice to request a CDP hearing."); see also Andre v. Commissioner, 127 T.C. 68, 71 (2006). However, we have not previously addressed a situation where the date appearing on a levy notice does not match the mailing date. Respondent contends that the mailing date controls in this scenario. Petitioner contends--contrary to the position a taxpayer would normally take--that the 30-day window for requesting a hearing under section 6330(a)(3)(B) commenced on February 11, 2009, the date appearing on the IRS letter. He asserts that he mailed the 1986 CDP Form on March 14, 2009--i.e., 31 days later--and that his request for a hearing was therefore untimely.

Although we have found no precedent that addresses the precise question involved here, a modest body of case law has developed on closely analogous questions. When considering the timeliness of notices of deficiency under section

6213, we have encountered situations where the date on the notice did not match the date on which the notice was successfully mailed to the taxpayer. Where the date on the notice was <u>earlier</u> than the date of mailing, we have held that "[t]he critical date is the date the deficiency notice was 'mailed.'" <u>August v. Commissioner</u>, 54 T.C. 1535, 1536 (1970); <u>see, e.g.</u>, <u>Lundy v. Commissioner</u>, T.C. Memo. 1997-14, 73 T.C.M. (CCH) 1693, 1695 (ruling that the date of mailing is generally "the date that the Commissioner actually places the notice of deficiency in the mail"); <u>United Tel. Co. v. Commissioner</u>, 1 B.T.A. 450 (1925). By contrast, when the date appearing on the notice of deficiency is <u>later</u> than the date of mailing, we have held that the former date controls. <u>See</u> <u>Loyd v. Commissioner</u>, T.C. Memo. 1984-172, 47 T.C.M. (CCH) 1450, 1453-1454; <u>Jones v. Commissioner</u>, T.C. Memo. 1984-171, 47 T.C.M. (CCH) 1444.

We recently applied the same line of reasoning in the CDP context. <u>See</u> <u>Bongam v. Commissioner</u>, 146 T.C. at __ (slip op. at 7). That case involved a different 30-day period in the CDP regime, namely, the requirement in section 6330(d)(1) that the taxpayer petition this Court within 30 days of the IRS notice of determination. We held that the mailing date of the IRS notice controlled when it was later than the date appearing on the letter.

In <u>Bongam</u> the IRS mailed a notice of determination to an address that was not the taxpayer's last known address. That notice was returned to the IRS as undeliverable. Several months later, on August 4, 2014, the IRS remailed the notice, without changing the original date, to the taxpayer's last known address by regular mail. The taxpayer received the notice at that address and petitioned this Court within 18 days of the mailing date.

Relying on the deficiency cases cited above, we held in <u>Bongam</u> that, "when the date appearing on a deficiency notice is earlier than the date of mailing, '[t]he critical date is the date the deficiency notice was "mailed."'" 146 T.C. at __ (slip op. at 11) (quoting <u>August</u>, 54 T.C. at 1536). As we explained:

> We see no reason why the above-described rules governing our deficiency jurisdiction should not also govern our jurisdiction in CDP cases, thus allowing taxpayers the greatest opportunity, consistently with the statutory language, to obtain jurisdiction in our Court. We accordingly hold that the 30-day window prescribed by section 6330(d)(1) is calculated by reference to the Notice of Determination that was successfully sent to petitioner[] * * * on August 4, 2014. Because petitioner actually received that Notice and filed his petition within 30 days, we have jurisdiction to hear this case. [146 T.C. at __ (slip op. at 12).]

This logic is equally applicable here. We will employ the same principle of construction to IRS notices issued under section 6330(a) that we have applied to IRS notices issued under section 6330(d). When the date appearing on a levy no-

tice is earlier than the date of mailing, the 30-day window prescribed by section 6330(a)(2) and (3)(B) is calculated by reference to the date of mailing.

In so ruling, we are guided by the proposition that, in determining whether we have jurisdiction over a given matter, this Court and the Courts of Appeals have given our jurisdictional provisions a broad, practical construction rather than a narrow, technical one. See Lewy v. Commissioner, 68 T.C. 779, 781 (1977). Acceptance of petitioner's submission would disserve the interests of most taxpayers by converting the CDP hearing, in the scenario presented here, into an "equivalent hearing" immune from judicial review. When a statutory provision is capable of two interpretations, "we are inclined to adopt a construction which will permit us to retain jurisdiction without doing violence to the statutory language." Traxler v. Commissioner, 61 T.C. 97, 100 (1973).[9]

---

[9]Petitioner asserts that the date appearing on the levy notice must be deemed to be the mailing date "when there is a clear discrepancy and no other date was provided to the petitioner." To support that proposition he cites Jones v. Commissioner, T.C. Memo. 1984-171, 47 T.C.M. (CCH) 1444, but his reliance is misplaced. In Jones, the date on the notice of deficiency was later than the mailing date; consistently with the authorities discussed in the text, we held that the date appearing on the notice controlled. We stated: "We emphasize that we are not announcing a rigid rule under which the date stamped on the face of the notice will always be considered the date the notice was mailed for purposes of sec. 6213(a). We do not intend, for example, to shorten the period which existing law gives the taxpayer to file his petition when the date stamped on the notice is earlier than the date of delivery to the postal authorities." Id., 47 T.C.M. (CCH) at 1448 n.5.

Petitioner errs in contending that the regulations point to a different conclusion. They provide that a CDP hearing must be requested within the 30-day period commencing "the day after the date of the CDP Notice." Sec. 301.6330-1(b)(1), Proced. & Admin. Regs.; see id. para. (c)(1) (hearing must be requested within 30 days after "the date of the CDP Notice"). Notably, these provisions refer, not to the date on the CDP notice, but to the date of the CDP Notice. The examples to the regulations indicate that "the date of the CDP Notice" is the date on which that notice is mailed. See id. subpara. (3), Example (1) (concluding that the 30-day period begins to run the day after "[t]he IRS mails a CDP Notice of intent to levy to * * * [the taxpayer's] last known address").[10]

C.    Determination of the Mailing Date

In deciding whether the SO erred in sustaining the proposed levy, the relevant question is whether she properly concluded that the 10-year period of limitations remained open. The answer to this question depends on whether the 1986

---

[10]For similar reasons petitioner errs in relying on Offiler v. Commissioner, 114 T.C. 492 (2000), where we relied on the regulations discussed in the text. We there stated that the taxpayer had to request a CDP hearing within "the 30-day period following the date of the notice" and concluded that he had not requested a hearing "within 30 days of the issuance of the * * * notice" on February 1, 1999. Id. at 494, 497. Because February 1, 1999, was the date on which the notice was mailed, our Opinion in Offiler is fully consistent with the conclusion reached in the text.

CDP Form was mailed by petitioner and/or received by respondent within 30 days of the date on which the IRS mailed the levy notice.

Generally speaking, we have approved a settlement officer's reliance on tax transcripts to prove relevant facts. See, e.g., Tornichio v. Commissioner, T.C. Memo. 2002-291; Schroeder v. Commissioner, T.C. Memo. 2002-190. Here, the SO reviewed petitioner's tax transcripts and determined that the levy notice for 1986-1991 was mailed to petitioner's last known address on February 13, 2009. We have held that a settlement officer may not rely solely on computerized tax transcripts where the taxpayer demonstrates "an irregularity in the assessment procedure." See Jordan v. Commissioner, T.C. Memo. 2011-243, 102 T.C.M. (CCH) 386, 387. Petitioner argues that he has identified "an irregularity in the assessment procedure" because the date on the levy notice does not match its mailing date. Assuming arguendo that petitioner is correct, the SO was required to do more than check his tax transcripts.

The SO did more than check the tax transcripts. She verified the mailing date shown on the transcripts by consulting the ICS history transcript maintained by the RO, which showed that the Letter 1058 was mailed on February 13. She reviewed the Form 3800 that the RO completed on February 13; the certified mail number on that form matched the certified mail number on the Form 3811 that

petitioner's wife signed on February 17.  The SO reasonably concluded that the Form 3811 bolstered her determination that the levy notice had been mailed on February 13, because the IRS office was closed on the intervening three days.[11]

The evidence at trial supported the SO's determination.  The testimonial and documentary evidence established that the RO left the levy notice in the outgoing mail bin on February 13; that an IRS staff person collected the notice from the mail bin and ran it through a private postage meter, which imprinted February 13 as the date; and that IRS staff placed the notice into a postal box outside the IRS office for collection by USPS personnel later that afternoon.

While it seems plausible that USPS personnel collected the notice from the IRS postal box on February 13, the evidence does not conclusively establish that they deposited it into the U.S. mail that same day.  But it is immaterial to our conclusion whether the notice was actually mailed on February 13 or February 14.  The SO correctly determined that February 13 was the earliest date on which the levy notice could have been mailed.  That date was within 30 days of March 14, the date on which petitioner testified that he mailed the 1986 CDP Form.  See sec.

---

[11]The SO testified that she had inquired whether a certified mail log existed, but the RO replied in the negative.  At that time, the Internal Revenue Manual (IRM) did not require the creation of such a log when sending out levy notices. See IRM pt. 5.11.1.2.2.2(8) (Mar. 21, 2008).

7502. Moreover, because March 14 was a Saturday and March 15 was a Sunday, the 30-day window was extended until Monday, March 16, 2009, the date on which the IRS received petitioner's 1986 CDP Form. See sec. 7503. Thus, regardless of whether the levy notice was mailed on February 13 or February 14, petitioner's 1986 CDP Form was timely filed under section 6330(a)(3)(B) by reference both to the date of its mailing and to the date of its receipt.

Petitioner cites cases like Galluzzo v. Commissioner, 564 F. App'x 656 (3d Cir. 2014), and Pietanza v. Commissioner, 92 T.C. 729 (1989), for the proposition that the IRS must establish the exact date on which a notice of this sort was mailed. That is certainly true where (as in those cases) acceptance of one of the possible mailing dates as the actual mailing date would lead to the conclusion that the notice was untimely. In this case, by contrast, both possible mailing dates for the levy notice lead to the conclusion that petitioner's 1986 CDP Form was timely filed. Ascertaining the notice's exact mailing date is unnecessary here because it would not affect the outcome.[12]

---

[12]For essentially the same reasons, petitioner errs in contending that the SO abused her discretion by declining to determine whether he had mailed the 1986 CDP Form on March 13 or (as he testified) on March 14. Both dates are within 30 days of February 13, the earliest date on which the levy notice could have been mailed. Moreover, regardless of when petitioner mailed the 1986 CDP Form, it was timely because the IRS received it on March 16, the due date as extended by

(continued...)

D.    Petitioner's Other Arguments

Petitioner contends that the levy notice was fatally defective because it violated what he calls "the 'information' requirement" of section 6330(a)(3). That section provides that a levy notice shall furnish certain information to the taxpayer "in simple and nontechnical terms," including "the right of the person to request a hearing during the 30-day period under paragraph (2)." Petitioner acknowledges that the levy notice informed him of his right to request a hearing within 30 days. But he says that this information was not communicated "in simple and nontechnical terms" because the 30-day period did not run from February 11, the date on the levy notice, but from the subsequent mailing date.

This argument faces several hurdles at the threshold. First, petitioner cites no authority for the proposition that Congress envisioned a sanction for the failure of an IRS notice to be drafted "in simple and nontechnical terms." Second, petitioner cites no authority for the proposition that section 6330(c)(1), which obligates the settlement officer to "obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met," includes the obligation to verify that IRS communications have been drafted "in

---

[12](...continued)
section 7503. A settlement officer does not abuse her discretion when she refrains from making determinations that are immaterial to her decision.

simple and nontechnical terms." Third, if we were to assume that a settlement officer must verify this (or that it is part of a challenge to the existence of the underlying liability), petitioner cites no authority for the proposition that the failure to employ "simple and nontechnical terms" in a levy notice would require invalidating the collection action where the failure does not prejudice the taxpayer's ability to secure a CDP hearing.

In any event, we have frequently upheld the validity of IRS notices even though there was a mismatch between the letter date and the mailing date. In Bongam, 146 T.C. at __ (slip op. at 11), the date appearing on the notice of determination was earlier than the mailing date, as it was here. Our conclusion as to the notice's validity was "unaffected by the fact that the date appearing on the Notice of Determination does not match the date on which the Notice was successfully mailed to petitioner." Going back many years, we have reached the same conclusion regarding notices of deficiency, and we have done so regardless of whether the taxpayer was aware of the actual mailing date. See S. Cal. Loan Ass'n v. Commissioner, 4 B.T.A. 223 (1926); United Tel. Co., 1 B.T.A. 450; Hurst, Anthony & Watkins v. Commissioner, 1 B.T.A. 26 (1924). Although a notice of deficiency, like a notice of levy, "refers taxpayers to the date appearing at the top of the notice," it is "settled law that the date appearing on the notice of deficiency is not the

date of mailing (although the dates may coincide)." Traxler, 61 T.C. at 99. The directive that levy and lien notices should be drafted "in simple and nontechnical terms" does not justify a different outcome here.[13]

In a related vein, petitioner argues that the SO failed the verification requirement by paying insufficient heed to a section of the Internal Revenue Manual (IRM) cautioning that a levy notice should bear the same date as that on which it is mailed to the taxpayer. See IRM pt. 5.11.1.2.2.2(4) (Mar. 21, 2008). The IRM lacks the force of law and does not create rights for taxpayers. Anonymous v. Commissioner, 145 T.C. 246, 257 (2015). Petitioner cites no case in which a settlement officer was found to have abused her discretion regarding verification by failing to follow an IRM provision. Cf. Wadleigh, 134 T.C. at 294 n.13 (declining to decide "whether the procedures described in the IRM are administrative procedures that come within the verification requirement of sec. 6330(c)(1)"). As ex-

---

[13]Petitioner asserts that the IRS publications accompanying the levy notice failed to alert him to the importance of the mailing date. That assertion is incorrect. Publication 1660 reads: "The IRS can't levy or seize your property within 30 days from the date this notice is mailed, given to you, or left at your home or office." (Emphasis added). Even if an IRS publication offers erroneous information, such publications are not authoritative sources of Federal tax law. See Adler v. Commissioner, 330 F.2d 91, 93 (9th Cir. 1964) ("Nor can any interpretation by taxpayers of the language used in government pamphlets act as an estoppel against the government, nor change the meaning of taxing statutes."), aff'g T.C. Memo. 1963-196.

plained above, we have often upheld the validity of IRS notices where the letter date did not match the mailing date.

Finally, petitioner contends that "equitable estoppel applies to bar respondent from * * * relying on a mail date of the notice other than February 11, 2009." Petitioner asserts that the IRS misled him "by misrepresentation or concealment" as to the existence of a fact--namely, the date on which the levy notice was mailed --and that he "suffered prejudice as a result." His claim of prejudice is based on the notion that, while he requested a CDP hearing, what he really wanted was an "equivalent hearing" that would not suspend the period of limitations on collection. Rather than check the "Equivalent Hearing" box on the 1986 CDP Form, petitioner asserts that he aimed to achieve this goal by intentionally filing his CDP request one day late, using the February 11 date appearing on the levy notice as his starting point. He was prejudiced, he says, when his scheme was frustrated by the SO's conclusion that he was entitled to the CDP hearing he had asked for because commencement of the 30-day period was calculated by reference to the notice's mailing date.

Petitioner's estoppel argument is unpersuasive. See Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992) ("Estoppel is applied against the Commissioner 'with utmost caution and restraint.'" (quoting Estate of Emerson v. Commissioner,

67 T.C. 612, 617 (1977))).  The IRS did not "misrepresent or conceal" any fact. The date on the levy notice and the date imprinted on the envelope were visible for all to see.  If petitioner had not thrown away the envelope, the mismatch would have been apparent to him.

Petitioner's testimony concerning prejudice, moreover, was wholly lacking in credibility.  In February 2009 he could not pay his 1986-1991 Federal tax liabilities, which exceeded $550,000.  He averred on the 1986 CDP Form that he "can't pay the tax owed" and that "levy action will cause hardship."  Petitioner is an attorney; he studied the IRS publications he received; and he understood the difference between a CDP hearing and an "equivalent hearing."  His testimony that he actually sought an "equivalent hearing" was implausible for at least four reasons: (1) he did not check the box for "Equivalent Hearing" despite two opportunities to do so; (2) the IRS during the pendency of an "equivalent hearing" could begin immediate collection action, which was the last thing petitioner wanted; (3) any relief afforded by the IRS in an "equivalent hearing" would be purely discretionary and not subject to judicial review; and (4) the CDP hearing that he requested would entitle him to judicial review and defer IRS collection action indefinitely, thus achieving the goals he expressed in his hearing request.  For all these reasons, we find no credible evidence to support his claim of prejudice.

In consideration of the foregoing,

<u>An appropriate decision</u>

<u>will be entered</u>.