ANONYMOUS, PETITIONER *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT

Docket No. 8256–12D.          Filed October 26, 2015.

R issued P a final adverse determination letter (First Revocation Letter), accompanied by an examination report, that revoked P's tax-exempt status under I.R.C. sec. 501(c)(3) retroactively to Date 1. Litigation ensued and was settled by a closing agreement. Pursuant to the closing agreement, P agreed not to contest revocation of its tax-exempt status for prior years and to make a lump-sum payment to satisfy its tax obligations for those years. R agreed to withdraw the First Revocation Letter, to consider P's new application for exempt status, and, after acting on that application, to issue a new

revocation letter. R granted P's new application for exempt status and issued a new revocation letter (Second Revocation Letter). This letter likewise revoked P's exempt status retroactively to Date 1 but did not include the examination report. I.R.C. sec. 6110(a) provides that "[e]xcept as otherwise provided in this section, * * * any written determination * * * shall be open to public inspection." The Second Revocation Letter, as properly redacted, has been made available for public inspection. P initiated this action under I.R.C. sec. 6110(f)(3) to restrain disclosure of the First Revocation Letter and accompanying examination report. P contends that R's withdrawal of that letter before it was disclosed had the effect of rendering it "un-issued" or "a legal nullity." Because the disclosure obligation is triggered "upon issuance of any written determination," *see* I.R.C. sec. 6110(f)(1), acceptance of P's argument would prevent the First Revocation Letter and accompanying examination report from being open to public inspection at all. Alternatively, P asks that we restrain R from disclosing the portion of the examination report that discusses private inurement. R contends that the First Revocation Letter and accompanying examination report, as properly redacted, must be disclosed.

1. *Held*: The First Revocation Letter and accompanying examination report constitute a "written determination" that was properly "issued" to P. These documents must therefore be made available for public inspection under I.R.C. sec. 6110(a), subject to the deletions required by I.R.C. sec. 6110(c).

2. *Held*, *further*, neither I.R.C. sec. 6110(c) nor any other provision of I.R.C. sec. 6110 authorizes the deletion, in its entirety, of the portion of the examination report discussing private inurement.

*Sealed*, for petitioner.
*Sealed*, for respondent.

### OPINION

LAUBER, *Judge*: This is an action under section 6110(f)(3) to restrain disclosure of a written determination issued by the Internal Revenue Service (IRS or respondent). [1] Peti-

---

[1] All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. The record in this case is sealed pursuant to Rules 227 and 228; we accordingly state the facts in a manner intended to avoid any inadvertent disclosures. The appellate venue is in the U.S. Court of Appeals for the District of Columbia Circuit. *See* sec. 7482(b)(1) ("If for any

Continued

tioner seeks to restrain the IRS from opening for public inspection, subject to appropriate redactions, a final adverse determination letter issued to petitioner on Date 4 (First Revocation Letter). By this letter the IRS revoked petitioner's tax-exempt status retroactively to Date 1.

Litigation concerning this determination ensued and was settled by a closing agreement on Date 5. Pursuant to the closing agreement, petitioner agreed not to contest revocation of its tax-exempt status for prior years and to make a lump-sum payment in fulfillment of its tax obligations for those years. The IRS agreed to withdraw the First Revocation Letter and to process a new application for tax-exempt status that petitioner had filed on Date 3.

On Date 6, the IRS granted petitioner's new application and recognized it, effective Date 3, as an organization described in section 501(c)(3). The IRS concurrently issued petitioner a revised final adverse determination letter (Second Revocation Letter). The Second Revocation Letter revoked petitioner's exempt status for the period beginning Date 1 and ending Date 2, the day before Date 3. The Second Revocation Letter, as properly redacted, has been made available for public inspection pursuant to section 6110(a).

In light of these circumstances, petitioner contends that the First Revocation Letter should be deemed never to have been "issued." Because the disclosure obligation is triggered "upon issuance of any written determination," *see* sec. 6110(f)(1), acceptance of petitioner's argument would prevent that letter from being open to public inspection at all. Alternatively, petitioner asks us to restrain respondent from publicly releasing—even as properly redacted—the portion of the First Revocation Letter and accompanying examination report that discusses respondent's findings concerning private inurement.

We conclude that petitioner is not entitled to either form of relief. The parties have agreed on the redactions to the First Revocation Letter and accompanying examination report that are required by section 6110(c). We hold that the

reason no subparagraph of the preceding sentence applies, then such decisions may be reviewed by the Court of Appeals for the District of Columbia."). Petitioner's principal place of business is thus irrelevant.

letter and report, as thus redacted, must be made available for public inspection.

## *Background*

This case was submitted fully stipulated under Rule 122. Petitioner is a nonprofit corporation that the IRS, prior to Date 1, recognized as tax exempt under section 501(c)(3). Following an examination for certain tax years after Date 1 (the audit period), the IRS notified petitioner that it was proposing to revoke petitioner's tax-exempt status. This notice included an examination report (RAR) identifying four issues that the IRS believed to warrant revocation, including a finding that petitioner had allowed proceeds from its activities to inure to the benefit of private individuals.

Petitioner filed a protest, and the case was considered by the IRS Appeals Office (Appeals). In its rebuttal to the protest, the examination team stated its view that the protest advanced "unpersuasive arguments" that "do not change the ultimate decision reached in the RAR." The examination team made a recommendation "not to pursue the private inurement issues (issue number 4) of the RAR" but confirmed its view that revocation was justified on the other three grounds the report had advanced. Petitioner engaged in a lengthy administrative process in an effort to resolve the case with Appeals.

That effort was ultimately unsuccessful. On Date 4, the IRS National Office issued petitioner by certified mail a letter styled a "final adverse determination regarding your exempt status" (First Revocation Letter). This letter formally concluded the IRS investigation and revoked petitioner's tax-exempt status retroactively to Date 1. The letter informed petitioner:

> You have not demonstrated that you are operated exclusively for exempt purposes within the meaning of Internal Revenue Code section 501(c)(3) and Treasury Regulations section 1.501(c)(3)–1(d). You did not engage primarily in activities that accomplish one or more of the exempt purposes specified in section 501(c)(3). You are operated for a substantial non-exempt purpose. You are operated for the benefit of private rather than public interests and your activities resulted in substantial private benefit.

The letter included a lengthy report detailing the results of the IRS investigation. This report stated the applicable law and applied the law to the facts of petitioner's case. The report upheld the examination team's initial determinations as set forth in the RAR and concluded that revocation was warranted on all four grounds the examination team had identified, including private inurement.

The First Revocation Letter was accompanied by a "Notice of Intention to Disclose." *See* sec. 6110(f)(1). This notice informed petitioner that the IRS intended to make the First Revocation Letter and accompanying report open for public inspection under section 6110(a), subject to redaction of identifying and other confidential information as required by section 6110(c). The IRS also expressed its intention to impose a tax liability for the audit period, reflecting deficiencies in income tax flowing from petitioner's taxable status during those years.

Litigation ensued. After extensive negotiations, petitioner and respondent reached a settlement that resolved all issues except those raised by the instant disclosure action. In a closing agreement executed on Date 5, petitioner agreed not to contest revocation of its tax-exempt status for prior years and to make a lump-sum payment in fulfillment of its tax obligations for those years. The IRS agreed to withdraw the First Revocation Letter and to process a new Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code, that petitioner had filed on Date 3. It was agreed that the IRS would issue a new revocation letter after acting on the Form 1023.

Consistently with the closing agreement, the IRS informed petitioner, in a one-sentence letter also issued on Date 5: "We have determined that it is in the best interests of the Internal Revenue Service at this time to withdraw the Final Adverse Determination Letter, dated [Date 4] which revoked your tax-exempt status effective [Date 1]." Upon completing its review of petitioner's Form 1023, the IRS issued, on Date 6, a determination letter recognizing petitioner as an organization described in section 501(c)(3). This determination as to petitioner's tax-exempt status was effective Date 3, the date the Form 1023 was filed. Consistently with that action, the IRS issued petitioner a new final adverse determination letter, also issued on Date 6 (Second Revocation

Letter), revoking petitioner's tax-exempt status for the period beginning on Date 1 and ending on Date 2, the day before Date 3.

The reasoning stated in the Second Revocation Letter was substantially identical to that stated in the First Revocation Letter, including the following sentence: "You are operated for the benefit of private rather than public interests and your activities resulted in substantial private benefit." However, the Second Revocation Letter was not accompanied by the lengthy report outlining the facts discovered during the IRS investigation and applying the law to those facts. The Second Revocation Letter, as properly redacted, has been made available for public inspection under section 6110(a).

The closing agreement executed on Date 5 resolved all issues between the parties except those raised by the instant disclosure action. In this action, petitioner seeks to restrain respondent's public disclosure of the First Revocation Letter and accompanying examination report or (in the alternative) to restrain disclosure of the section of that report discussing private inurement. In the event we determine that these documents must be made available for public inspection under section 6110(a), the parties have reached agreement on, and stipulated to, "the redactions necessary to protect petitioner's confidentiality" under section 6110(c).

## Discussion

### I. *Legal Standard and Burden of Proof*

The submission of this case fully stipulated changes neither the burden of proof nor the effect of a failure of proof. *See* Rule 122(b); *Okerson v. Commissioner*, 123 T.C. 258, 263 (2004). "In an action to restrain disclosure, the burden of proof as to the issue of whether disclosure should be made shall be upon the petitioner." Rule 229(b). Petitioner also bears under Rule 229 the burden of proof "as to the jurisdictional requirements described in Rule 220(c)." The Tax Court is a court of limited jurisdiction, and we must ascertain whether the case before us is one that Congress has authorized us to consider. *See* sec. 7442; *Estate of Young v. Commissioner*, 81 T.C. 879, 881 (1983). However, we always have jurisdiction to determine whether we have jurisdiction.

*Cooper v. Commissioner*, 135 T.C. 70, 73 (2010); *Kluger v. Commissioner*, 83 T.C. 309, 314 (1984).

## II. *The Merits*

### A. *The Statutory Scheme for Disclosure Actions*

Congress mandated in section 6110(a) that "the text of any written determination and any background file document relating to such written determination shall be open to public inspection" except as otherwise provided in section 6110. Section 6110(c) provides that the Secretary, before disclosing any written determination, "shall delete" seven specified types of information. These include "the names, addresses, and other identifying details of the person to whom the written determination pertains" and "information the disclosure of which would create a clearly unwarranted invasion of privacy." Sec. 6110(c)(1), (5). [2]

Before disclosing a written determination, the IRS must provide interested persons with a "notice of intention to disclose," sec. 6110(f)(1), and must provide those persons with "administrative remedies" to challenge the proposed level of disclosure, sec. 6110(f)(2). An interested person "who has exhausted his administrative remedies" but remains aggrieved may commence an "action to restrain disclosure." Sec. 6110(f)(3)(A)(i), (iii). This judicial remedy is created in favor of an interested person "who disagrees with any failure to make a deletion with respect to that portion of any written determination or any background file document which is to be open * * * to public inspection." Sec. 6110(f)(3)(A)(ii).

The statute specifically circumscribes this Court's jurisdiction in an action to restrain disclosure. Section 6110(f)(3)(A) provides that an aggrieved person:

> may, within 60 days after the mailing by the Secretary of a notice of intention to disclose any written determination or background file document * * * file a petition in the United States Tax Court (anonymously, if appropriate) for a determination with respect to that portion of such

---

[2] Section 6110(g)(5) provides that certain written determinations need not be made publicly available but shall be made available only upon "written request." These include documents created during criminal investigations and jeopardy assessments, sec. 6110(g)(5)(A), and written determinations addressing changes in a taxpayer's accounting method, annual accounting period, and similar technical matters, *see* sec. 6110(g)(5)(B). None of these exceptions is relevant here.

written determination or background file document which is to be open
to public inspection.

By limiting our role to the making of a determination "with
respect to that portion of such written determination," that
shall be disclosed, the statute restricts our jurisdiction to
deciding the propriety of the Commissioner's proposed dele-
tions. This limitation on our jurisdiction is confirmed by sec-
tion 6110(m), which provides that the Commissioner "shall
not be required by any Court * * * to refrain from disclo-
sure" of any written determination whose disclosure is man-
dated by section 6110(a).

In *Anonymous v. Commissioner*, 134 T.C. 13 (2010), a tax-
payer sought to restrain the IRS from disclosing a private
letter ruling (PLR) in its entirety. The taxpayer based this
demand on its submission that "the contents of the PLR are
contrary to law and thus respondent acted arbitrarily, capri-
ciously, and in bad faith in issuing it." *Id.* at 18. We declined
to consider the taxpayer's argument, concluding that
"[s]ection 6110(f)(3)(A) limits this Court's determination to
the Commissioner's deletion decisions." 134 T.C. at 19. As we
explained, that section "grants this Court jurisdiction to
make a determination with respect to the Commissioner's
decision to delete or not delete information from a PLR
before public disclosure." *Id.* at 18–19. Section 6110(f)(3)(A)
"does not give this Court the authority to order the Commis-
sioner to restrain disclosure of a PLR in its entirety." 134
T.C. at 19. Having concluded that the PLR at issue con-
stituted a "written determination" within the meaning of sec-
tion 6110(a), we held that we lacked jurisdiction to consider
the relief petitioner requested.

We operate under the same jurisdictional constraint here.
If the First Revocation Letter and accompanying report con-
stituted a "written determination" that was "issued" to peti-
tioner, we have no authority to order respondent to withhold
it from public inspection altogether. Our jurisdiction is then
limited to deciding the propriety of the IRS' proposed dele-
tions—a task that the parties, by their agreement, have
already discharged for us.

B. "*Written Determination*"

"The term 'written determination' means a ruling, deter-
mination letter, technical advice memorandum, or Chief

Counsel advice." Sec. 6110(b)(1)(A). The regulations define a "ruling" as "a written statement issued by the National Office to a taxpayer * * * that interprets and applies tax laws to a specific set of facts." Sec. 301.6110–2(d), Proced. & Admin. Regs. "A ruling generally recites the relevant facts, sets forth the applicable provisions of law, and shows the application of the law to the facts." *Ibid.* "'Issuance' of a written determination occurs, with respect to rulings and determination letters, upon the mailing of the ruling or determination letter to the person to whom it pertains." *Id.* para. (h). The First Revocation Letter, with its explanatory report, thus constitutes a "written determination" that must be made available for public inspection if it was a "determination letter" or a "ruling" that was "issued" to petitioner.[3]

An organization seeking recognition of exemption under section 501(c)(3) must file an application on Form 1023 demonstrating its compliance with the statutory requirements. If the IRS believed these requirements were satisfied, it would issue, for the tax period at issue, "[a] favorable determination letter or ruling" to the requesting organization. Rev. Proc. 2014–9, sec. 4.01, 2014–2 I.R.B. 281, 285.[4] If the IRS concluded that these requirements were not satisfied, it would communicate that proposed decision to the applicant. This communication took the form of a "proposed adverse determination letter" if issued by EO Determinations and a "proposed adverse ruling" if issued by EO Technical. *Id.* secs. 7.02 and 7.03, 2014–2 I.R.B. at 288. In either case, the requesting organization was afforded protest, appeal, and conference rights. If the IRS ultimately decided that the application must be denied, it would issue, as appropriate, "a

---

[3] The First Revocation Letter was not a "technical advice memorandum" (TAM) because it was not issued by the IRS National Office to an IRS district director or field office. *See* sec. 301.6110–2(f), Proced. & Admin. Regs. Respondent notes that the terminology of this regulation does not comport with current practice because the IRS has not had "district directors" for several years. However, TAMs are still issued by the National Office and, if adopted by the relevant field office, are regarded as having been "issued" for purposes of section 6110.

[4] The revenue procedure governing applications for recognition of exemption under section 501(a) is usually updated annually. *See* Rev. Proc. 2015–9, sec. 1.02, 2015–2 I.R.B. 249, 251. The 2014 provisions discussed in the text are substantially similar to those in effect for the relevant tax period.

final adverse determination letter" or a "final adverse ruling." *Id.* secs. 7.06 and 7.07, 2014–2 I.R.B. at 288.

If an organization initially received a favorable IRS determination but failed to operate as section 501(c)(3) requires, the "determination letter or ruling recognizing [its] exemption * * * [might] be revoked or modified." Rev. Proc. 2014–9, sec. 12, 2014–2 I.R.B. at 291. This revocation might be retroactive if the organization "omitted or misstated a material fact" in its application materials, "operated in a manner materially different from that originally represented," or engaged in improper transactions. *Id.* sec. 12.01, 2014–2 I.R.B. at 291–292. "In the case of a revocation or modification of a determination letter or ruling, the appeal and conference procedures * * * [were] generally the same" as when the IRS proposed to deny an organization's exemption application ab initio. *Id.* sec. 12.02, 2014–2 I.R.B. at 292 (cross-referencing section 7).

The First Revocation Letter represented a final decision by the IRS to revoke petitioner's tax-exempt status retroactively to Date 1. That letter was a written statement issued by the IRS National Office to a taxpayer; the letter and its accompanying examination report recite the relevant facts, set forth the applicable provisions of law, and show the application of the law to the facts. These documents thus manifest all the features of a "ruling" as defined in the regulations. *See* sec. 301.6110–2(d), Proced. & Admin. Regs.

The applicable revenue procedure did not explicitly state how the IRS document communicating a revocation of exempt status was to be characterized. However, since the Commissioner's initial recognition of exempt status took the form of "[a] favorable determination letter or ruling," Rev. Proc. 2014–9, sec. 4.01, 2014–2 I.R.B. at 285, the document that modified or revoked that initial determination must logically be either a "ruling" or a "determination letter" as well.[5]

_____

[5] The parties have stipulated that the IRS initially recognized petitioner as tax exempt "by a determination letter," and the First Revocation Letter is styled "a final adverse determination" regarding petitioner's exempt status. But respondent does not contend that the latter document was a "determination letter" for purposes of section 6110(b)(1)(A). *See* sec. 301.6110–2(e), Proced. & Admin. Regs. (defining a "determination letter" as "a written statement issued by a district director in response to a written inquiry

Continued

In either event, the First Revocation Letter and its accompanying report constitute a "written determination" as defined in section 6110(b)(1)(A). *See Tax Analysts v. IRS*, 350 F.3d 100, 103–104 (D.C. Cir. 2003) (holding that documents revoking tax-exempt status are subject to disclosure under section 6110(a)).

It is equally clear that the First Revocation Letter and its accompanying report were "issued" to petitioner. The regulations unambiguously provide that " '[i]ssuance' of a written determination occurs, with respect to rulings and determination letters, upon the mailing of the ruling or determination letter to the person to whom it pertains." Sec. 301.6110–2(h), Proced. & Admin. Regs. It is undisputed that these documents were sent to petitioner by certified mail on Date 4. They were thus "issued" to petitioner on that date. *See Tax Analysts v. IRS*, 495 F.3d 676, 680 (D.C. Cir. 2007) ("The common meaning of 'issue,' as a transitive verb, is '[t]o give exit to; to send forth, or allow to pass out; to let out; to emit; to discharge.' * * * [A]nd we see no reason this meaning should not apply here."), *aff'g* 416 F. Supp. 2d (D.D.C. 2006). Because the First Revocation Letter and its accompanying report constitute a "written determination" that was "issued" to petitioner, the statute requires that these documents, as properly redacted under section 6110(c), be made available for public inspection under section 6110(a).

## C. *Petitioner's Arguments*

Petitioner concedes that the First Revocation Letter "at one point * * * constituted a written determination." Petitioner contends, however, that respondent's withdrawal of that letter prior to disclosing it had the effect of rendering it "un-issued" or "a legal nullity." According to petitioner, respondent's withdrawal amounted to an admission that the letter was an "obvious error." Petitioner cites a provision of the Internal Revenue Manual (IRM) stating that an "erroneous" letter, before being disclosed, should be replaced with

---

by an individual or an organization that applies principles and precedents previously announced by the National Office to the particular facts involved"). As noted earlier, the language in this regulation concerning the role of "district directors" is outdated. *See supra* note 3.

a corrected copy, in effect converting the original letter into an un-issued draft. *See* IRM pt. 32.3.1.12.1 (Aug. 11, 2004).

This argument is unpersuasive for at least three reasons. First, the Commissioner's withdrawal of the First Revocation Letter did not constitute an admission that the letter or its attached examination report was erroneous in any respect. Rather, the Commissioner agreed to withdraw the letter as part of a settlement that reflected the parties' mutual decision to avoid the perceived hazards of litigation.

Second, the IRM procedures for correcting an error by substituting pages or reissuing a letter prior to disclosure have no application here. The "obvious error" exception set forth in the IRM applies to minor problems such as a "typographical error, incorrect citation, incorrect cross references, or an inadvertent omission," not to substantive changes in legal reasoning or findings of fact. *See* IRM pt. 32.3.1.12(1) and (2). Indeed, the IRM advises that "[a] request for reconsideration of a ruling or a request for supplemental rulings is not a request for correction of an obvious error." *Id.* pt. 32.3.1.12(2). The "obvious error" exception cannot be invoked to demand the displacement of the First Revocation Letter and the attached examination report in their entirety.

Third, the IRM lacks the force of law and does not create rights for taxpayers. *Marks v. Commissioner*, 947 F.2d 983, 986 n.1 (D.C. Cir. 1991), *aff'g* T.C. Memo. 1989–575; *Tax Analysts*, 416 F. Supp. 2d at 127 (same). The regulations unambiguously provide that a written determination is "issued" when it is mailed to the taxpayer. Sec. 301.6110–2(h), Proced. & Admin. Regs. A provision of the Internal Revenue Manual could not override this regulation, even if there were some inconsistency between the two, which there is not.

Neither the statute nor the regulations provide any support for petitioner's submission that a written determination that has been properly "issued" can be "un-issued." Indeed, the regulations create a strong inference to the contrary. They provide that "background file documents," which normally are disclosable under section 6110(a), do not include "a request for a ruling or determination letter that is withdrawn prior to issuance thereof." Sec. 301.6110–2(g)(2)(v), Proced. & Admin. Regs. This regulation shows that the Department of the Treasury knew how to exclude a "withdrawn" document from disclosure when it so intended, and it

made this exclusion available only when the document is withdrawn "prior to issuance" of the ruling or determination letter. The regulations contain no provision that would exclude from disclosure a ruling or determination letter, or background document relating thereto, that is withdrawn *after* the written determination has been issued.

Section 6110(a) requires disclosure of "any written determination" except as otherwise provided "in this section." The word "any" demands a broad construction, *see Tax Analysts*, 495 F.3d at 680–681, and the courts have uniformly refused to recognize exceptions from disclosure that are not distinctly spelled out in the statute.[6] Section 6110 incorporates no exception for a situation in which the Commissioner agrees to withdraw a previously issued written determination as part of a settlement based on the hazards of litigation. We are not at liberty to craft such an exception where none exists. *See* sec. 6110(m) (providing that "the Secretary shall not be required by any court * * * to refrain from disclosure" of a written determination whose disclosure is mandated by section 6110(a)); *Anonymous*, 134 T.C. at 19 ("Section 6110(f)(3)(A) is a precise grant of jurisdiction and does not allow for additional general remedies.").

Petitioner alternatively contends that we should restrain respondent from disclosing, if not the entire First Revocation Letter and explanatory report, at least the section of the report that discusses the IRS' findings concerning private inurement. Petitioner notes that the IRS examination team, in its rebuttal to petitioner's protest, made a recommendation "not to pursue the private inurement issue." This recommendation was apparently based on the examination team's belief that private inurement could be difficult to prove and that a court would find the other three grounds for revocation sufficient.

---

[6] *See generally Tax Analysts*, 495 F.3d at 681 (advisory emails from IRS Office of Chief Counsel to field office staff, however brief or informal, constitute "Chief Counsel advice" to be disclosed under section 6110(a)); *Tax Analysts*, 350 F.3d at 103 (section 6110 applies to determinations denying or revoking tax-exempt status); *Tax Analysts v. IRS*, 117 F.3d 607, 615–616 (D.C. Cir. 1997) (determinations labeled "Field Service Advice" are analogous to technical advice memoranda and thus subject to section 6110 disclosure).

Appeals evidently disagreed with this recommendation, since the report accompanying the First Revocation Letter clearly advances private inurement as one of four grounds for revoking petitioner's exemption. Yet respondent has admitted that, at some point during the ensuing negotiations, it "withdrew the inurement grounds for revocation." In light of this admission, petitioner urges that respondent be restrained from disclosing the section of the examination report discussing private inurement in order to prevent "public confusion."

There is no legal basis for this argument. Section 6110(c) specifies seven categories of information that must be deleted from documents made available for public inspection under subsection (a). The parties have stipulated to the deletions that section 6110(c) requires, including the deletions that are required to the "private inurement" section of the examination report. The statute authorizes no further deletions. To the extent petitioner is arguing that this portion of the report has been "withdrawn" and should thus be deemed "unissued," we reject that argument for the reasons stated above. And to the extent petitioner is arguing for an equitable exception based on the supposed risk of public confusion, "[s]ection 6110(f)(3)(A) is a precise grant of jurisdiction and does not allow for additional general remedies." *Anonymous*, 134 T.C. at 19.

To reflect the foregoing,

*Decision will be entered for respondent.*