# United States Tax Court

T.C. Memo. 2023-119

FARID RAFIEE AND MISUK P. RAFIEE,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 8800-21L.                                    Filed September 26, 2023.

————

*Alissa S.L. Gipson* and *Renesha N. Fountain*, for petitioners.

*Courtney M. Hill* and *Gordon P. Sanz*, for respondent.

## MEMORANDUM OPINION

LAUBER, *Judge*: In this collection due process (CDP) case petitioners seek review pursuant to section 6330(d)(1)[1] of the determination by the Internal Revenue Service (IRS or respondent) to uphold the filing of a notice of intent to levy. The notice relates to petitioners' income tax liability for tax years 2009 and 2010. Respondent has filed a Motion for Summary Judgment under Rule 121, contending that there are no disputes of material fact and that the settlement officers did not abuse their discretion in sustaining the proposed levy. We agree and accordingly will grant the Motion.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*2]                           *Background*

The following facts are derived from the parties' pleadings, Motion papers, Declarations, and attached Exhibits, which include the administrative record of the CDP proceeding. *See* Rule 121(c). Petitioners resided in Alabama when they timely filed their Petition.

At relevant times petitioner husband was the chief operating officer of an international company. The IRS examined petitioners' joint Federal income tax returns for 2009 and 2010 and sent them a timely notice of deficiency. After the case was docketed, the parties executed a Stipulated Decision in which they agreed that there were deficiencies of $3,050,797 and $1,228,352, and accuracy-related penalties of $457,620 and $184,253, due from petitioners for 2009 and 2010, respectively. The Court entered a Decision to that effect in 2016. *Rafiee v. Commissioner*, Docket No. 20261-15 (Oct. 31, 2016).[2]

The IRS assessed petitioners' 2009 and 2010 liabilities as redetermined in our Decision. Petitioners did not pay those liabilities upon notice and demand for payment. As of September 2019 their total unpaid liability for these years exceeded $6.54 million.

On August 23, 2019, in an attempt to collect these unpaid liabilities, the IRS mailed petitioners a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing (levy notice). Through their counsel petitioners timely requested a CDP hearing, checking the boxes marked "Installment Agreement," "Offer in Compromise," and "I Cannot Pay Balance." Petitioners alleged that they "d[id] not have sufficient liquid assets to satisfy this liability all at once" and requested a face-to-face (FTF) hearing.

Petitioners' case was assigned to a settlement officer (SO1) in the IRS Independent Office of Appeals (Appeals) in Boston, Massachusetts. SO1 verified that the 2009–2010 liabilities had been properly assessed and that all requirements of applicable law and administrative procedure had been satisfied. After reviewing IRS records, SO1 ascertained that petitioners were not in compliance with their tax filing obligations. As of January 15, 2020, they had not filed a Federal income tax return for 2018. And although they were "historically . . . required" to pay estimated tax, they had made no estimated tax payments for 2018 or 2019.

---

[2] The notice of deficiency referenced in the text also determined a deficiency for 2011. That liability is not the subject of any collection action in this case.

**[\*3]**    On January 15, 2020, SO1 sent petitioners and their representative a letter scheduling a telephone conference for February 25, 2020. SO1 informed petitioners that, in order for him to consider a collection alternative, they needed to supply before the hearing (1) a completed Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, with supporting financial information; (2) a completed Form 656, Offer in Compromise; (3) a signed tax return for 2018; and (4) "[p]roof you paid your estimated tax payments in full for the year to date." SO1 explained that he was requesting a signed copy of petitioners' 2018 tax return because IRS "records show that [it] has not been filed." On January 28, 2020, petitioners' representative reiterated their request for an FTF hearing, but SO1 demurred because petitioners did not meet the eligibility criteria the IRS has established for such conferences.

On February 24, 2020, the day before the scheduled conference, petitioners' representative sent SO1 a completed Form 433–D, Installment Agreement, proposing monthly payments of $166,666 beginning April 28, 2020. Petitioners' representative expressed his understanding that the delinquent 2018 return would soon be filed, but he did not address petitioners' continued failure to make estimated tax payments. Petitioners did not supply before the conference a completed Form 433–A, nor did they propose an offer-in-compromise (OIC).

The telephone conference took place as scheduled. Petitioners' representative stated his belief that petitioners had filed their 2018 tax return within the preceding 24 hours.[3] But SO1 noted that petitioners still had not supplied a completed Form 433–A or proof that they were current on their estimated tax obligations. Petitioners' representative requested additional time to submit that information, and SO1 set a deadline of March 10, 2020, for doing so.

On March 6, 2020, petitioners sent SO1 an unsigned copy of their 2018 return, which reported adjusted gross income of $3,845,168. Four days later, petitioners' counsel requested another two-week extension to supply the information SO1 had requested. SO1 agreed and extended the deadline to March 25, 2020. He later extended the deadline again to April 10, 2020.

---

[3] Petitioners' account transcript for 2018 shows that the IRS Service Center received their 2018 return on February 25, 2020, and processed it on March 23, 2020.

[*4]    On April 24, 2020, SO1 received from petitioners' representative a completed Form 433–A and a chart of expenses, but no proof of estimated tax payments. The assets listed on the Form 433–A included an ownership share of a limited liability company (LLC) valued at $5.7 million (with $2.4 million in equity), a primary residence valued at $2.2 million (with $400,000 in equity), a condominium valued at $790,000 (with $115,000 in equity), a rental property valued at $121,000 (with $121,000 in equity), land in Hawaii valued at $400,000 (with $400,000 in equity), and six vehicles, including four Mercedes Benzes and a Ferrari. Petitioners' representative subsequently submitted more than 700 pages of bank records and other financial information. SO1 was unable to retrieve or review these documents because of office closures related to the COVID-19 pandemic.

On August 24, 2020, the case was reassigned to a new settlement officer (SO2). After retrieving the documents referenced above, SO2 decided to submit an Appeals Referral Investigation (ARI) request to the IRS Collection Division.[4] On September 9, 2020, SO2 forwarded an ARI request and petitioners' Form 433–A with supporting documents to his Appeals Team Manager (ATM) for transmission to the Collection Division.

As of January 25, 2021, SO2 had received no response from the Collection Division. He noted in his case activity record that petitioners had not filed a tax return for 2019 and had made no estimated tax payments for the current year.[5] On the basis of petitioners' Form 433–A, SO2 determined that they were ineligible for currently not collectible (CNC) status.

SO2 confirmed that notice and demand for payment had been sent to petitioners' last known address and verified that all requirements of applicable law and administrative procedure had been satisfied. He concluded that petitioners were ineligible for an OIC because they had made no such offer and had not submitted a Form 656. Although petitioners had proposed an IA, SO2 concluded that they were

---

[4] An ARI may be used to verify a taxpayer's collection information statement (CIS) in various circumstances, including when the taxpayer proposes an installment agreement (IA) and "provides a new CIS to Appeals that requires verification." *Internal Revenue Manual* (IRM) 8.22.7.4(1) (Aug. 26, 2020).

[5] Because of the COVID pandemic, the IRS extended the filing deadline for 2019 tax returns to July 15, 2020. It also granted taxpayers who needed more time to file an opportunity to extend to October 15, 2020. *See* I.R.S. Notice 2020-18, 2020-15 I.R.B. 590 (2020); I.R.S. News Release IR-2020-134 (June 29, 2020).

[*5] ineligible for one because they were "not in filing compliance," noting both their failure to file a 2019 return and their failure to make required payments of estimated tax for the current year. Finally, SO2 determined that petitioners did not qualify for CNC status because they had "equity in assets and have not shown that liquidation of the assets would cause a hardship."

Recommending that the levy notice be sustained, SO2 forwarded a draft notice of determination and closing documents to his ATM for approval. The ATM approved SO2's recommendation to sustain the levy. On February 8, 2021, Appeals sent petitioners two identical notices of determination (one addressed to each spouse) sustaining the levy. Each notice informed petitioners that "you are not in filing compliance and a collection alternative could not be granted or approved at this time." With respect to their request for CNC status, each notice advised that "[t]he Form 433A reflected ability to pay the [2009–2010] liabilities in full."

On March 10, 2021, petitioners timely petitioned this Court, contending that the SOs abused their discretion by (among other things) declining the request for an FTF hearing and rejecting the proposed IA and request for CNC status. On April 26, 2023, respondent filed a Motion for Summary Judgment, to which petitioners timely responded.

*Discussion*

I. *Summary Judgment*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). We may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. Where the moving party makes and properly supports a motion for summary judgment, "the nonmovant may not rest on the allegations or denials in that party's pleadings" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial. Rule 121(d). We find that there exist no genuine disputes of material fact and that summary adjudication is appropriate.

**[\*6]** II.    *Standard of Review*

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case.  The general parameters for such review are marked out by our precedents.  Where the taxpayer's underlying tax liability is properly at issue, we review the IRS's determination de novo. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000).  Where the validity of a taxpayer's underlying liability is not properly in dispute, we review the IRS decision for abuse of discretion only.  *Jones v. Commissioner*, 338 F.3d 463, 466 (5th Cir. 2003); *Goza*, 114 T.C. at 182.  Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).

Taxpayers may challenge their underlying tax liability at a CDP hearing only if they did not receive a statutory notice of deficiency for that liability or did not otherwise have an opportunity to dispute it. § 6330(c)(2)(B).  Petitioners received a notice of deficiency for 2009–2010 and challenged the Commissioner's determinations in the case at Docket No. 20261-15.  We entered the parties' Stipulated Decision in that case, and the decision is now final.  *See* § 7481(a).  Petitioners did not dispute their underlying liability at the CDP hearing and do not challenge it here.  *See Thompson v. Commissioner*, 140 T.C. 173, 178 (2013).  We thus review the SOs' determinations for abuse of discretion only.  *See* § 6330(c)(2)(B); *Goza,* 114 T.C. at 182.

III.    *Abuse of Discretion*

In deciding whether the SOs abused their discretion, we consider whether they (1) properly verified that the requirements of applicable law and administrative procedure were met, (2) considered relevant issues that petitioners raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [petitioners] that any collection action be no more intrusive than necessary."  *See* § 6330(c)(3).  Our review of the record establishes that SO1 and SO2 properly discharged all of their responsibilities under these provisions.

A.    *Verification*

Section 6330(c)(1) provides that "[t]he appeals officer shall at the [CDP] hearing obtain verification from the Secretary that the

[*7] requirements of any applicable law or administrative procedure have been met." Petitioners contend that SO2, in two ways, fell short in this respect.

Petitioners first contend that SO2 failed to verify timely supervisory approval of the penalties assessed for 2009–2010. *See* § 6751(b)(1). But those penalties were assessed consistently with the Stipulated Decision that petitioners executed in Docket No. 20261-15. As noted above, petitioners are precluded from challenging that liability—on section 6751(b)(1) grounds or otherwise—because they received a notice of deficiency and had the opportunity to challenge the penalties in this Court. *See* § 6330(c)(2)(B); *cf. Laidlaws Harley Davidson Sales, Inc. v. Commissioner*, T.C. Memo. 2023-90, at *7 (holding in a CDP case that "verification of compliance with section 6751(b) would serve no bona fide purpose" because the SO was bound by a prior decision of this Court to impose a penalty); *Rockafellor v. Commissioner*, T.C. Memo. 2019-160, 118 T.C.M. (CCH) 462, 465 (holding in a CDP case that taxpayer waived requirements of section 6751(b) by executing a closing agreement that included accuracy-related penalties).[6]

Second, petitioners contend that SO2 failed to follow a provision of the IRM stating that, "[i]f Collection discovers a taxpayer has not remained in filing compliance, Collection attempts to secure the delinquent return(s)." *See* IRM 8.22.7.10.5.3(1) (Aug. 26, 2020). Petitioners do not dispute that SO1 repeatedly warned them that he could not consider a collection alternative unless they submitted delinquent returns and became current with their estimated tax obligations. But they complain that SO2 did not reiterate that warning before issuing the notice of determination. In petitioners' view, this supposed lack of communication amounted to a "fail[ure] to follow [r]espondent's internal guidance" and thus violated the verification requirement.

We are not persuaded. Petitioners were plainly on notice that they needed to be in compliance with their return-filing and estimated tax obligations in order to be eligible for a collection alternative. In his January 15, 2020, letter scheduling the CDP hearing, SO1 requested a signed 2018 tax return and made clear that he was doing so because IRS "records show[ed] that [it] ha[d] not been filed." He repeatedly told

---

[6] Petitioners contend that their 2009–2010 liabilities include additions to tax for failure to pay tax appearing in a notice and demand for payment, *see* § 6651(a)(3), and that the SOs failed to verify supervisory approval for those amounts. But supervisory approval is not required for "any addition to tax under section 6651." *See* § 6751(b)(2)(A).

[*8] petitioners that they needed to pay their "estimated tax payments in full for the year to date." When petitioners neglected to submit proof of payment of estimated tax, SO1 gave their representative no fewer than three extensions of time to supply it.

Petitioners do not contend that they *actually filed* a delinquent return for 2019, or that they *actually made* the required estimated tax payments for 2020 or 2021, before the notice of determination was issued. Rather, they contend that SO2 erred by failing *to remind them* of their obligation to do these things. But "a taxpayer need not be an expert in tax law to know that tax returns have fixed filing dates." *Nunn v. Commissioner*, T.C. Memo. 2002-250, 84 T.C.M. (CCH) 403, 409 (citing *United States v. Boyle*, 469 U.S. 241, 251 (1985)). "[T]axpayers are charged with knowledge of the law," *Niedringhaus v. Commissioner*, 99 T.C. 202, 222 (1992), and an SO need not remind a taxpayer that a tax return is due each year on April 15, *Cavazos v. Commissioner*, T.C. Memo. 2008-257, 96 T.C.M. (CCH) 341, 344. SO2 was under no duty to remind petitioners of their most basic tax obligations, which SO1 had repeatedly emphasized to them.

In any event, the IRM lacks the force of law and does not create rights for taxpayers. *Anonymous v. Commissioner*, 145 T.C. 246, 257 (2015). Petitioners cite no case in which an SO was found to have abused his discretion by failing to verify that a particular IRM provision was followed. *Cf. Wadleigh v. Commissioner*, 134 T.C. 280, 294 n.13 (2010) (declining to decide whether IRM procedures fall within the verification requirement of section 6330(c)(1)). "[C]ompliance with the IRM's requirements is not mandatory." *See Urban v. Commissioner*, 964 F.2d 888, 890 (9th Cir. 1992), *aff'g* T.C. Memo. 1991-220. And we have often upheld an SO's determination to sustain collection action despite a failure to follow some IRM provision. *See Weiss v. Commissioner*, 147 T.C. 179, 196 (2016), *aff'd*, No. 16-1407, 2018 WL 2759389 (D.C. Cir. May 22, 2018); *Walker v. Commissioner*, T.C. Memo. 2018-22, 115 T.C.M. (CCH) 1082, 1087.

### B.    *Collection Alternatives*

At their CDP hearing petitioners were entitled to make offers of collection alternatives, such as an OIC or an IA. *See* § 6330(c)(2) and (3). Petitioners did not propose an OIC and did not submit a completed Form 656. "There is no abuse of discretion when Appeals fails to consider an [OIC] when a Form 656 was not submitted to Appeals." *Gentile v. Commissioner*, T.C. Memo. 2013-175, 106 T.C.M. (CCH) 75, 77, *aff'd*, 592

[*9] F. App'x 824 (11th Cir. 2014). We thus focus on petitioners' contention that SO2 abused his discretion in rejecting their IA proposal.

SO2 indicated in the notice of determination that his principal reason for rejecting petitioners' IA proposal was their failure to come into compliance with their return filing and estimated tax obligations. We have consistently held that an SO does not abuse his discretion when he declines to consider collection alternatives for a taxpayer who is not in tax compliance. *See, e.g.*, *First Rock Baptist Church Child Dev. Ctr. v. Commissioner*, 148 T.C. 380, 391 (2017); *Giamelli v. Commissioner*, 129 T.C. 107, 111–12 (2007); *Boulware v. Commissioner*, T.C. Memo. 2014-80, *aff'd*, 816 F.3d 133 (D.C. Cir. 2016). The requirement of current compliance as a condition of executing an IA "ensures that current taxes are paid and avoids 'the risk of pyramiding tax liability.'" *Hull v. Commissioner*, T.C. Memo. 2015-86, 109 T.C.M. (CCH) 1438, 1441 (quoting *Schwartz v. Commissioner*, T.C. Memo. 2007-155, 93 T.C.M. (CCH) 1377, 1379); *see Orum v. Commissioner*, 412 F.3d 819, 821 (7th Cir. 2005), *aff'g* 123 T.C. 1 (2004).

Upon review of petitioners' IRS account transcripts, SO1 ascertained that they had not filed a return for 2018 and had made no estimated tax payments for 2018 or 2019. SO1 repeatedly advised them that they needed to cure these failures. Although petitioners eventually did file a return for 2018, they submitted no evidence that they had paid their estimated tax "in full for the year to date." SO1 gave their representative no fewer than three extensions of time to submit such proof, but none was ever forthcoming.

On January 25, 2021, SO2 determined that petitioners were still delinquent on their current tax obligations—as of then, their obligation to file a return for 2019 and to make estimated tax payments for 2020. Given petitioners' track record of current and prior filing noncompliance, SO2 did not abuse his discretion in declining to accept their proposed IA.

Petitioners urge that SO2 abused his discretion by failing to communicate his decision to reject their proposed IA before issuing the notice of determination, thereby closing the case prematurely. But even if SO2 had done as petitioners suggest, the fact remains that they were not in compliance with their tax obligations on that date, and SO2 could have rejected their proposed IA (or any counteroffer) on this ground alone. Petitioners were aware of their return-filing and estimated tax obligations and had ample opportunity to come into compliance before

**[\*10]** the notice of determination was issued. SO2 had no affirmative duty to remind them of what the law required. *See supra* pp. 7–9.

From the date they received the CDP scheduling letter (January 15, 2020) until the date the notice of determination was issued (February 8, 2021), petitioners had nearly 13 months to come into compliance with their tax obligations. They were given numerous opportunities and extensions of time to do so. SOs are not obligated to offer taxpayers an indefinite amount of time to come into compliance. *See Biggs-Owens v. Commissioner*, T.C. Memo. 2020-113, 120 T.C.M. (CCH) 79, 81; *Wind Surf & Sail Pools, Inc. v. Commissioner*, T.C. Memo. 2019-130, 118 T.C.M. (CCH) 304, 306. SO2 did not abuse his discretion in closing the case when he did, on the basis of the information available to him at that time.[7]

Petitioners alternatively requested that their account be placed in CNC status. To be entitled to such relief, taxpayers must demonstrate, on the basis of their assets, equity, income, and expenses, that they have no apparent ability to make payments on the outstanding tax liability. *See Foley v. Commissioner*, T.C. Memo. 2007-242, 94 T.C.M. (CCH) 210, 212. An account may not be placed in CNC status if the taxpayer has income or equity in assets unless enforced collection would cause hardship. *See Siebert v. Commissioner*, T.C. Memo. 2021-34, 121 T.C.M. (CCH) 1230, 1236 (citing IRM 5.16.1.2.9(1) (Aug. 25, 2014)). A hardship exists if the taxpayer is unable to pay reasonable basic living expenses. *Margolis-Sellers v. Commissioner*, T.C. Memo. 2019-165, 118 T.C.M. (CCH) 488, 498. (citing IRM 5.16.1.2.9(1)).

Here, SO2 determined that petitioners, far from being unable to pay anything at all, had reported on their Form 433–A numerous assets that could be used to reduce their tax liabilities. These assets included (among other things) an LLC investment with equity of $2.4 million and real estate with total equity exceeding $1 million. Petitioners' 2018 tax return, moreover, reported adjusted gross income of $3,845,168.

---

[7] Petitioners complain that neither SO1 nor SO2 proposed a collection alternative to them but simply rejected the IA they offered. But an SO is not required to negotiate over the specific terms of an IA where the taxpayer—being out of filing compliance—is entitled to no collection alternative whatsoever. *See Nimmo v. Commissioner*, T.C. Memo. 2020-72, 119 T.C.M. (CCH) 1504, 1506 ("[A]n SO does not abuse her discretion when she declines to consider collection alternatives for a taxpayer who has failed to file all required returns and to make required estimated tax payments." (first citing *Giamelli*, 129 T.C. at 111–12; and then citing *Starkman v. Commissioner*, T.C. Memo. 2012-236)).

[*11] Considering the information that petitioners themselves supplied, SO2 reasonably concluded that they could pay at least some of their tax liability and "ha[d] not shown that liquidation of the assets would cause a hardship." This Court will neither substitute its judgment for that of an SO nor recalculate a taxpayer's ability to pay. *See O'Donnell v. Commissioner*, T.C. Memo. 2013-247, 106 T.C.M. (CCH) 477, 481.[8]

Petitioners fault the notice of determination for not identifying which specific assets SO2 considered in concluding that CNC status was not available to them. But we have previously upheld notices of determination, even those of less-than-ideal clarity, when the basis for the determination is reasonably discernable from the record. *See Melasky v. Commissioner*, 151 T.C. 93, 106 (2018), *aff'd*, 803 F. App'x 732 (5th Cir. 2020); *cf. Kasper v. Commissioner*, 150 T.C. 8, 24–25 (2018) ("Although we may not accept any *post hoc* rationalizations for agency action provided by the Commissioner's counsel, we may consider any 'contemporaneous explanation of the agency decision' contained in the record." (quoting *Tourus Records, Inc. v. Drug Enf't Admin.*, 259 F.3d 731, 738 (D.C. Cir. 2001))). Here, petitioners' Form 433–A and the SOs' case activity record list multiple assets that justified SO2's conclusion: an ownership share of an LLC valued at $5.7 million (with $2.4 million in equity), a primary residence valued at $2.2 million (with $400,000 in equity), a condominium valued at $790,000 (with $115,000 in equity), a rental property valued at $121,000 (with $121,000 in equity), land in Hawaii valued at $400,000 (with $400,000 in equity), and six vehicles, including four Mercedes Benzes and a Ferrari.[9]

Finally, petitioners contend that SO1 abused his discretion by failing to offer them an FTF hearing. We have repeatedly held that section 6330 does not require one. *See Katz v. Commissioner*, 115 T.C. 329, 337–38 (2000); *see also* Treas. Reg. § 301.6330-1(d)(2), Q&A-D6 (noting

---

[8] Petitioners argue that SO2 failed to follow IRM guidelines by not informing them of his conclusion that "there was sufficient equity in [their] assets." But their Form 433–A showed on its face that there was several million dollars of equity in their assets. Petitioners do not explain how SO2's silence amounted to an abuse of discretion, and they cite no case law supporting their argument. In any event we reiterate that the IRM lacks the force of law and does not create rights for taxpayers. *See supra* p. 8.

[9] Petitioners say there is no evidence that "[r]espondent's Compliance Office actually reviewed" the 700 pages of documents that they provided in support of their Form 433–A. But SO2's determination regarding CNC status was based solely on the face values of the assets that petitioners listed on the Form 433–A. Supporting financial documents (or the lack thereof) were not critical to his determination.

**[\*12]** that a proper hearing may occur by telephone, correspondence, or review of documents). In particular we have held that an SO's denial of an FTF hearing does not constitute an abuse of discretion where (as here) a taxpayer fails to provide past due returns. *See Moline v. Commissioner*, T.C. Memo. 2009-110, 97 T.C.M. (CCH) 1571, 1572, *aff'd*, 363 F. App'x 675 (10th Cir. 2010); *see also* Treas. Reg. § 301.6330-1(d)(2), Q&A-D8.

C.     *Balancing*

Petitioners urge that SO2 did not comply with section 6330(c)(3)(C), which requires the IRS to balance "the need for the efficient collection of taxes with the legitimate concern of [petitioners] that any collection action be no more intrusive than necessary." The record shows that SO2 performed a balancing test, finding that the proposed levy action adequately balances the need for efficient tax collection with petitioners' concerns, citing petitioners' ongoing noncompliance and their equity in assets. Given petitioners' history of noncompliance, the magnitude of their outstanding liabilities, and their failure to comply with their ongoing tax obligations, we conclude that SO2 did not abuse his discretion in sustaining the proposed levy.

We have considered all of petitioners' arguments and, to the extent those arguments are not addressed herein, we find them to be irrelevant, without merit, or duplicative of the arguments addressed above. Finding no abuse of discretion in any respect, we will grant respondent's Motion for Summary Judgment and sustain the proposed collection action. We note that petitioners are free to come into filing compliance and submit to the IRS at any time, for its consideration and possible acceptance, a collection alternative in the form of an IA or an OIC, supported by the requisite financial information.

To reflect the foregoing,

*An appropriate order and decision will be entered.*