# United States Tax Court

T.C. Memo. 2024-17

JUSTIN C. CLOAR,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

_____

Docket No. 24145-18L.                          Filed February 6, 2024.

_____

*Reba Mangum Wingfield*, for petitioner.

*William F. Castor* and *Vassiliki Economides Farrior*, for respondent.

## MEMORANDUM OPINION

WEILER, *Judge*: In this collection due process (CDP) case, petitioner, Justin C. Cloar, seeks review pursuant to section 6330[1] of a determination by the Internal Revenue Service (IRS) Independent Office of Appeals[2] (Appeals) upholding a proposed levy collection action for tax years 2008, 2009, 2010, and 2012 (years at issue) and rejecting Mr. Cloar's offer-in-compromise (OIC). For the reasons set forth below, we will affirm Appeals' determination.

_____

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[2] On July 1, 2019, the IRS Office of Appeals was renamed the IRS Independent Office of Appeals. *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 981, 983 (2019).

[*2]                                   *Background*

This case was submitted fully stipulated under Rule 122. The stipulated facts, which are derived from the administrative record of Mr. Cloar's CDP hearings, are incorporated in our findings by this reference.[3] Mr. Cloar resided in Arkansas when he timely filed his Petition.

I.    *Tax Liabilities*

Mr. Cloar has unpaid individual income tax liabilities for the years at issue along with penalties and interest, totaling $107,410. Mr. Cloar filed income tax returns for the years at issue but failed to remit full payment of the tax due on the respective returns. Mr. Cloar does not contest the amounts of his underlying tax liabilities.

II.    *Initial CDP Hearing*

On May 30, 2017, in an effort to collect Mr. Cloar's unpaid tax liabilities for the years at issue, the IRS issued him Notice LT11, Notice of Intent to Levy and Notice of Your Right to a Hearing. In this Notice the IRS informed Mr. Cloar that he owed $107,410 in unpaid taxes, penalties, and interest. On June 29, 2017, Mr. Cloar timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing, to the IRS requesting a CDP or equivalent hearing for the years at issue. Along with his Form 12153 Mr. Cloar also submitted a Form 9465, Installment Agreement Request.

On the Form 12153 Mr. Cloar checked the "Installment Agreement," "Offer in Compromise," and "I Cannot Pay Balance" boxes as collection alternatives. Mr. Cloar also checked the box labeled "Other," under which he reiterated that he was seeking a collection alternative. In a letter included with his Form 12153 Mr. Cloar requested that respondent consider a proposed installment agreement under which he would pay $25 per month, or, in the alternative, he requested currently-not-collectible (CNC) status, acceptance of an OIC, and/or penalty abatement.

---

[3] In *Robinette v. Commissioner*, 439 F.3d 455, 461–62 (8th Cir. 2006), *rev'g* 123 T.C. 85 (2004), the U.S. Court of Appeals for the Eighth Circuit held that this Court's review of CDP cases is limited by the Administrative Procedure Act and therefore that such review is limited to the administrative record. Because appeal of this case would lie to the Eighth Circuit, we will follow that court's precedent. *See* I.R.C. § 7482(b)(1)(G)(i).

**[\*3]**    The IRS acknowledged receipt of Mr. Cloar's Form 12153 by letter dated August 15, 2017, and advised him that his CDP hearing request would be forwarded to Appeals and that to make an OIC, he would need to submit a completed Form 656, Offer in Compromise, along with Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals. The IRS then advised Appeals that Mr. Cloar was requesting an in-person CDP hearing, intending to make an audio recording of the conference, and that he was seeking an installment agreement, CNC status, an OIC, and penalty abatement.

On September 8, 2017, Settlement Officer (SO) Nathalie Raygosa was assigned to Mr. Cloar's case. SO Raygosa ensured that all requirements of applicable law and administrative procedure were followed when Notice LT11 was issued. On September 14, 2017, SO Raygosa sent Mr. Cloar Letter 4837, scheduling a telephone CDP hearing for October 20, 2017, and requesting that he submit a completed Form 433–A, signed tax returns for the 2015 and 2016 tax years, and other financial documentation.

SO Raygosa held the telephone CDP hearing with Mr. Cloar's representative on October 20, 2017. During the hearing Mr. Cloar's representative confirmed that he was no longer seeking an installment agreement or CNC status because he intended to submit an OIC. At Mr. Cloar's representative's request, SO Raygosa allowed them until October 27, 2017, to submit an OIC. On October 25, 2017, SO Raygosa received Mr. Cloar's Form 656, in which he offered $756 to resolve his unpaid tax liabilities for the years at issue.

Mr. Cloar's OIC was sent to the IRS's Centralized Offer in Compromise (COIC) unit for consideration. On May 10, 2018, the COIC unit recommended that Appeals reject Mr. Cloar's OIC, stating that it must be increased before it would be accepted. The COIC unit found that Mr. Cloar had a reasonable collection potential (RCP) of $18,824. This is the amount that the COIC unit calculated Mr. Cloar would be able to pay towards his tax liabilities.

The COIC unit determined Mr. Cloar's RCP on its findings that he had total monthly income of $5,249, total monthly expenses of $4,358, and total assets of $8,132. The only asset in which Mr. Cloar held any equity was his "Arkansas Public Employees Retirement System" retirement account, to which the COIC unit assigned a quick sale value of $8,132.

**[\*4]**   Mr. Cloar's case was then returned to Appeals on May 18, 2018. On August 3, 2018, SO Raygosa held a telephone conference with Mr. Cloar's representative to discuss the rejected OIC. SO Raygosa advised the representative that the OIC was being rejected since all income and expenses were not disclosed by Mr. Cloar and since the OIC was not in the best interest of the government. SO Raygosa offered to place Mr. Cloar's account into CNC status if he would withdraw his OIC. Mr. Cloar's representative also held a telephone conference with SO Raygosa's manager to discuss the rejection of the OIC. Mr. Cloar declined to be placed into CNC status and withdraw his OIC. Ultimately, Appeals upheld the rejection of Mr. Cloar's OIC and issued him a notice of determination dated November 6, 2018, sustaining the IRS's proposed levy action. Mr. Cloar timely petitioned this Court for review.

When Mr. Cloar's case was first brought before this Court, he was working at the Arkansas Public Defenders Commission; however, he was subsequently terminated from this position on September 25, 2019. Mr. Cloar's termination occurred after he petitioned this Court but before a decision was entered.

III.   *Supplemental CDP Hearing*

On October 9, 2020, the parties filed a joint Motion to Remand, requesting that Mr. Cloar's case be remanded to Appeals for further consideration, on the basis of his change in circumstances. On October 14, 2020, this Court granted the parties' Motion, and Mr. Cloar's case was sent back to Appeals for a supplemental CDP hearing. On December 15, 2020, SO Raygosa sent Mr. Cloar's representative a letter scheduling the supplemental CDP hearing for January 12, 2021, and requesting certain financial information.

On January 12, 2021, the supplemental telephone CDP hearing was held, during which Mr. Cloar's representative provided SO Raygosa with an OIC and new financial documentation. SO Raygosa sent an Appeals Referral Investigation to the COIC unit to review Mr. Cloar's OIC and his new financial information. The COIC unit sent Mr. Cloar a letter on May 31, 2021, requesting he submit updated Forms 656 and 433–A.

On March 16, 2021, Mr. Cloar signed a Termination Refund Application for his "Arkansas Public Employees Retirement System" retirement account. His employee contributions and interest totaled

**[\*5]** $11,773, and this was the amount he was entitled to receive upon terminating the account. Of that total amount, 25% was deducted for state and federal tax withholdings. The remaining $8,829 was deposited into Mr. Cloar's bank account on April 15, 2021. Mr. Cloar then transferred these funds to the IRS in a series of seven transactions between May 13 and 19, 2021.

On June 30, 2021, Mr. Cloar submitted the requested Form 656, in which he offered $25 to settle his unpaid tax liabilities. On Form 433–A Mr. Cloar reported zero dollars in monthly income and no remaining equity in his retirement account.

On the basis of the newly submitted Forms 656 and 433–A the COIC unit found that Mr. Cloar had an RCP of $23,155. The COIC unit calculated that Mr. Cloar had $4,762 in total monthly income and $3,510 in total monthly expenses, resulting in $1,252 per month that could be used towards his unpaid tax liabilities. An internal memorandum shows that the COIC unit determined a monthly income of $4,762 by averaging Mr. Cloar's income from the 2018 and 2019 tax years. At the time of the COIC unit's calculations Mr. Cloar had been unemployed for over two years. The COIC unit also determined that Mr. Cloar had $8,132 in assets.

The COIC unit rejected Mr. Cloar's OIC of $25 since it was below his calculated RCP of $23,155. Appeals affirmed the COIC unit's rejection of Mr. Cloar's OIC and issued him a supplemental notice of determination on May 16, 2022.

In the supplemental notice of determination SO Raygosa stated that Mr. Cloar's unemployment was "only temporary" and that his "profession, license, and education" would allow him to find employment at his previous level of income.[4] Both the COIC unit and SO Raygosa claimed that *Internal Revenue Manual* (IRM) 5.8.5.20 (Sept. 24, 2021) supported their calculation of Mr. Cloar's total monthly income.

## *Discussion*

I.   *Standard of Review*

We have jurisdiction to review Appeals' determination pursuant to section 6330(d)(1). *See Murphy v. Commissioner*, 125 T.C. 301, 308

---

[4] SO Raygosa's notes reflect her opinion that "there are no limitations [to Mr. Cloar's future employment] other than maybe his reputation" and health issues.

**[\*6]** (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). Where, as here, the underlying tax liability is not at issue, we review the determination of Appeals for abuse of discretion. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 182 (2000). When this Court remands a case to Appeals and there is a supplemental determination, we review the supplemental determination. *Hoyle v. Commissioner*, 136 T.C. 463, 467–68 (2011), *supplementing* 131 T.C. 197 (2008).

In reviewing for abuse of discretion we must uphold Appeals' determination unless it is arbitrary, capricious, or without sound basis in fact or law. *See Murphy*, 125 T.C. at 320; *Taylor v. Commissioner*, T.C. Memo. 2009-27, 2009 WL 275721, at \*9. We do not substitute our judgment for that of Appeals, but consider "whether, in the course of making its determination, the Appeals Office complied with the legal requirements of an administrative hearing." *Charnas v. Commissioner*, T.C. Memo. 2015-153, at \*7.

II.     *Abuse of Discretion*

Mr. Cloar asserts that SO Raygosa abused her discretion in sustaining the collection action and rejecting his revised OIC of $25. In deciding whether Appeals abused its discretion, we consider whether SO Raygosa: (a) properly verified that the requirements of applicable law or administrative procedure have been met, (b) considered any relevant issues Mr. Cloar raised, and (c) weighed "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [Mr. Cloar] that any collection action be no more intrusive than necessary." *See* I.R.C. § 6330(c)(3). Our review of the record establishes that SO Raygosa satisfied each of these requirements.

A.     *Verification*

Before issuing a notice of determination, Appeals must verify that all requirements of applicable law and administrative procedure have been met. I.R.C. § 6330(c)(1), (3)(A). We have authority to review an SO's satisfaction of the verification requirement regardless of whether the taxpayer raised the issue at the CDP hearing. *Kidz Univ., Inc. v. Commissioner*, T.C. Memo. 2021-101, at \*10 (citing *Hoyle*, 131 T.C. at 200–03).

Mr. Cloar did not assert in his Petition that SO Raygosa failed to satisfy this requirement, and he has not directed this Court's attention to any facts that would support such a finding. *See* Rule 331(b)(4)

[*7] ("Any issue not raised in the assignments of error shall be deemed to be conceded."); *Rockafellor v. Commissioner*, T.C. Memo. 2019-160, at *12. In any case, on the basis of our review of the record before us, we find that SO Raygosa satisfied the verification requirement. *See* I.R.C. § 6330(c)(1).

B. *Issues Raised*

1. *OIC*

Mr. Cloar's argument in this case has centered on the rejection of his OIC. During his supplemental CDP hearing Mr. Cloar proposed an OIC of $25 to resolve his unpaid tax liabilities of more than $107,410 for the years at issue. His OIC was based on doubt as to collectability and his contention that he did not have sufficient assets and income to cover the full amount of his unpaid tax liabilities.

The specific issue raised by Mr. Cloar surrounding the rejection of his OIC was the calculation of his future income. Mr. Cloar did not raise any issues regarding the computation of his assets; accordingly, we deem this issue to be waived.

The Commissioner may compromise a tax liability on the basis of doubt as to collectibility where the taxpayer's assets and income are less than the full amount of the tax liability. *See* Treas. Reg. § 301.7122-1(b)(2). However, the Commissioner may reject an OIC when the taxpayer's RCP exceeds his offer. *See Johnson v. Commissioner*, 136 T.C. 475, 486 (2011), *aff'd per curiam*, 502 F. App'x 1 (D.C. Cir. 2013). Generally, the Commissioner will reject any offer substantially below the taxpayer's RCP unless special circumstances justify acceptance of such an offer. *See Mack v. Commissioner*, T.C. Memo. 2018-54, at *10; Rev. Proc. 2003-71, § 4.02(2), 2003-2 C.B. 517, 517.

Under the Commissioner's administrative procedures an OIC based on doubt as to collectibility will be acceptable only if it reflects the taxpayer's RCP. *Johnson*, 136 T.C. at 485. Both parties appear to agree the Mr. Cloar's RCP is less than his tax liability; however, the parties disagree as to the amount of Mr. Cloar's RCP.

Section 7122(d)(1) gives the Commissioner wide discretion to accept OICs and to prescribe guidelines "to determine whether an offer-in-compromise is adequate and should be accepted." In reviewing an SO's determination, we do not decide for ourselves what would be an acceptable collection alternative. *See Thompson v. Commissioner*,

[*8] 140 T.C. 173, 179 (2013); *Murphy*, 125 T.C. at 320; *Randall v. Commissioner*, T.C. Memo. 2018-123, at *9 ("We . . . do not recalculate a different amount for an acceptable installment agreement or OIC."). Our review instead is limited to determining whether the SO abused her discretion, that is, whether her decision to reject petitioner's OIC was arbitrary, capricious, or without sound basis in fact or law. *See Thompson*, 140 T.C. at 179; *Murphy*, 135 T.C. at 320.

### 2.    *Analysis of OIC*

In determining Mr. Cloar's ability to pay, the COIC unit reviewed Form 433–A and other documentation Mr. Cloar provided. After analyzing these documents, the COIC unit determined that Mr. Cloar could pay $1,252 per month—the difference between his monthly expenses and his monthly income. The COIC unit claimed to use the guidance in IRM 5.8.5.20 in making this calculation. According to respondent, SO Raygosa also followed the guidance found in IRM 5.8.5.20 when she affirmed the COIC unit's rejection of Mr. Cloar's OIC. Mr. Cloar disputes respondent's argument and contends SO Raygosa abused her discretion by not following the IRM.

When considering a taxpayer's qualification for a collection alternative, such as an OIC, an SO does not abuse her discretion if she relies on the guidelines set forth in the IRM. *See Orum v. Commissioner*, 123 T.C. 1, 13 (2004), *aff'd*, 412 F.3d 819 (7th Cir. 2005). However, the IRM does not have the force of law, and it does not create rights for taxpayers. *Anonymous v. Commissioner*, 145 T.C. 246, 257 (2015).

SO Raygosa acknowledged that Mr. Cloar's circumstances had changed in recent years; however, she concluded that he had the potential to be employed at his prior level of income, given his profession, license, and education. SO Raygosa went on to explain how she considered public opinion and the foregoing provision of the IRM in determining that Mr. Cloar's change in circumstances did not warrant acceptance of his OIC.[5]

Mr. Cloar would like to be treated as a permanently unemployed taxpayer under the IRM with zero monthly earnings; however,

---

[5] In his second OIC Mr. Cloar does not list any monthly household earnings and lists total household monthly expenses of $2,547. In the course of subsequent questioning by SO Raygosa, Mr. Cloar disclosed that he continues to borrow from friends and family and was performing occasional contract work for a national law firm.

**[\*9]** SO Raygosa did not accept this unreasonable position. Instead, she treated Mr. Cloar as having the potential to be employed again with nearly the same income as he had when he worked with the Arkansas Public Defenders Commission. We acknowledge that the COIC unit and SO Raygosa likely did not correctly follow the guidance in IRM 5.8.5.20 when calculating Mr. Cloar's future income. However, we find this potential error by SO Raygosa to be harmless in this case.

Even if Mr. Cloar cannot secure work with the same wages as his previous employment, he could surely be re-employed at some point in the future, considering his education. Therefore, it is not unreasonable to conclude that Mr. Cloar has the potential to pay more than the nominal amount of $25 towards his total unpaid tax liabilities. In sum, we conclude that SO Raygosa acted appropriately and within her discretion in determining Mr. Cloar's RCP.

Our role is not to redetermine the RCP of the taxpayer and whether it is 100% accurate as determined by the COIC unit. *See Gustashaw v. Commissioner*, T.C. Memo. 2018-215, at \*23 (finding that a "[d]etermination of [a taxpayer's] exact RCP would be a meaningless exercise" when the taxpayer's RCP far exceeds the OIC (quoting *Estate of Duncan v. Commissioner*, T.C. Memo. 2016-204, at \*22 n.5, *aff'd*, 890 F.3d 192 (5th Cir. 2018))). Rather, our role is to review the actions of Appeals for abuse of discretion and whether the SO's actions were arbitrary, capricious, or without sound basis in fact or law. *See Murphy*, 125 T.C. at 320; *Taylor v. Commissioner*, 2009 WL 275721, at \*9. An OIC may also be rejected when it is not in the best interest of the government. *See* IRM 5.8.7.7.1(1) (Dec. 20, 2018). The rejection of an OIC not in the best interest of the government is not an abuse of discretion when Appeals has considered all of the facts and circumstances of the case and its reasoning is thoroughly explained in the determination. *See Hauptman v. Commissioner*, 831 F.3d 950, 954 (8th Cir. 2016), *aff'g* T.C. Memo. 2014-214.

Here, when SO Raygosa denied Mr. Cloar's OIC she included all of the facts and circumstances surrounding Mr. Cloar's case, and her reasoning was thoroughly explained. For SO Raygosa to conclude that Mr. Cloar's OIC should be rejected, she needed only to find that Mr. Cloar's RCP exceeded $25 (i.e., the amount he proposed to pay under his OIC). We need not address the more precise question of Mr. Cloar's RCP, since under the circumstances it was sufficient for SO Raygosa to determine that Mr. Cloar had an RCP greater than his OIC and acceptance was not in the best interest of the government. Therefore,

**[\*10]** without substituting our judgment for that of SO Raygosa, we cannot conclude that she acted in an arbitrary or capricious manner.

Considering the foregoing, we hold SO Raygosa did not abuse her discretion by rejecting Mr. Cloar's OIC.

### 3.  *Balancing*

Mr. Cloar alleges in his Simultaneous Opening Brief that SO Raygosa failed to properly apply the section 6330(c)(3)(C) balancing test. The Code requires that Appeals, in making a final determination after a collection due process hearing, decide "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the [taxpayer] that any collection action be no more intrusive than necessary." I.R.C. § 6330(c)(3)(C). The supplemental notice of determination asserts that SO Raygosa "balanced the competing interests" and "considered [Mr. Cloar's] change in circumstances." Additionally, SO Raygosa stated she balanced "all aspects of [Mr. Cloar's] past and current circumstances" in deciding to reject his OIC.

There is no evidence in the record suggesting to us that SO Raygosa abused her discretion in finding that the balancing requirement in section 6330(c)(3)(C) was met. In fact, it was Mr. Cloar who declined to be placed into "currently-not-collectible status."[6] Considering the record, we see no reason to disturb SO Raygosa's conclusion that the proposed levy collection action balanced the need for efficient tax collection with Mr. Cloar's legitimate concerns about intrusiveness.

### III.  *Conclusion*

Finding no abuse of discretion, we will sustain Appeals' supplemental determination. We have considered all of the arguments that the parties made, and to the extent they are not addressed herein, we find the arguments to be moot, irrelevant, or without merit.

---

[6] In her initial and supplemental notices of determination SO Raygosa notes Mr. Cloar did not agree to CNC status and therefore determined under the so-called balancing test, to sustain the IRS collection action. In the light of Mr. Cloar's actions, we cannot say that her analysis under the balancing test was in any way an abuse of discretion.

**[*11]**  To reflect the foregoing,

*An appropriate decision will be entered.*